Robert EADES et al., Appellants,

v.

Lester STEPHENS, Administrator of Estate of Gary Don Stephens, Deceased, Appellee.

Court of Appeals of Kentucky.

March 29, 1957.

Rehearing Denied June 7, 1957.

William G. Reed, Carrollton, for appellants.

Harlan Heilman, Carrollton, Wm. F. Threlkeld, Williamstown, for appellee.

SIMS, Judge.

Lester Stephens, administrator of his deceased son, Gary Don Stephens, recovered judgment against Robert and Walter Eades for $10,000 damages caused his decedent's estate by reason of the alleged negligence of Strawder Breeden, the driver of appellants' milk truck which it is averred ran over and killed Gary. A reversal of the judgment is urged because the court erred: 1. in overruling appellants' motion for a directed verdict; 2. in giving a last clear chance instruction.

In order to determine the questions raised, it is necessary to give a résumé of the evidence. Strawder Breeden was 19 years of age at the time of the accident and was the driver of appellants' milk truck, which was a 2-ton, 1953 Ford with dual rear wheels. The truck had a closed body in which milk was hauled on a regular route from the producing farms to market.

Gary was 14 years of age and was a brother-in-law of Strawder, who had married Gary's sister. The accident happened about 8 o'clock on Sunday morning, February 13, 1955, after Strawder had been driving the truck seven or eight months. With his parents' permission, Gary accompanied Strawder on this occasion just for the pleasure of the ride. Strawder's instructions from his employers forbade him to allow riders in the truck. The truck in gathering milk would leave the highway, enter a farm, pick up the milk and then proceed to the next farm. This often necessitated the opening of gates leading into the various farms. On this particular morning before the accident Gary had opened three or four gates for Strawder. The weather was cold, the heater in the truck was on and this caused the side windows of the cab to frost, making the mirrors on each side of the cab useless, but the windshield was kept clear by a defroster.

The truck left the highway and went down a lane to the Robbins farm to pick up milk. There was a "wire gap" used as a gate to the entrance to this farm. Strawder stopped the truck at this gap, Gary got out of the cab, went to the right side of the gap, undid it and pulled the wire to the left side of the lane to let the truck through. It was testified by Strawder that when he started the truck Gary was standing on the left side of the lane "about 8 feet from the post." Strawder did not designate whether he meant the right or the left post of the gap. For the sake of accuracy we use Strawder's words in describing the accident.

After testifying he put his truck in second gear to go through the gap at a speed of two

or three miles an hour, he said, "The next thing I heard was a noise on my right running board and door. * * * I caught a glimpse of a person through my frosted window and the next thing I knew it disappeared. * * * Straight down. * * * I continued to drive (until) I felt a—like I ran over a bump or something in the road. I stopped my truck as quick as I could and when I got out of it I heard him holler my name. He was laying behind the truck. * * * His feet was headed toward the truck—the front of the truck—and his feet was about two feet from the rear wheel and his head was laying toward the gap. He was laying on his back." Strawder was asked, "When you heard the noise on the door and saw the outline, did you know that was that boy?" He answered, "No, sir, not at the proper time."

He picked up Gary, put him in the truck and called the boy's father as soon as he could reach a telephone. Strawder took Gary to Carrollton where a doctor saw the boy, sent him in an ambulance to a hospital in Covington where he died about 11 o'clock that morning. In Carrollton Gary said to Strawder, "It wasn't your fault."

Strawder and Gary were the only ones present at the scene of the accident, hence Strawder was the only witness who testified as to what occurred. His testimony does not show whether the truck passed through the gap before it ran over the boy, nor whether he picked Gary up behind the right or the left rear wheels. Nor does the evidence show what part of Gary's body the truck passed over, if it did pass over him. There was no testimony, medical or otherwise, as to the boy's injuries. In fact it is not shown whether Gary was run over by the truck or whether he was standing on the right running board as the truck passed through the gap and was knocked off or crushed by the right post to which the "wire gap" was fastened.

The record does show the truck was equipped with "booster" brakes, which were in good condition. Strawder testified he could stop the truck in four or five feet on this gravel lane when traveling two or three

miles an hour. Two other experienced truck drivers testified this truck could have been stopped in two or three feet under the conditions existing at the time of the accident. The evidence shows Gary was 5 feet 8 inches tall, weighed 130 pounds, was active and alert physically and mentally.

It is patent under this record that Strawder was not shown to be negligent. Nor was there evidence upon which the court could correctly predicate the "last clear chance" instruction he gave over the objection of appellants. The recent opinion of Johnson v. Morris' Adm'x, Ky., 282 S.W. 2d 835, went fully into the last clear chance doctrine, including discovered peril and peril that should have been discovered by the exercise of ordinary care. It was there pointed out that before a last clear chance instruction should be given, the evidence must show as a matter of fact defendant actually had a last clear chance to avoid the accident or to extricate plaintiff from the danger in which plaintiff's own negligence had placed him. The facts surrounding each accident must be taken into consideration, such as the weather, whether it was daylight or dark when the accident happened, the length of time defendant had in which to avoid injuring the negligent plaintiff, and in each case facts must be proven which justify the conclusion that plaintiff's peril could have been discovered by defendant in time for defendant to have avoided injuring plaintiff. Also plaintiff's peril must be reasonably obvious to defendant and defendant must have reasonable time to avoid injuring plaintiff by the use of the means defendant had at hand to prevent the accident. The Johnson opinion goes into the question fully and cites and discusses many authorities. As it is a recent opinion, we refer the reader to it rather than to enter into further discussion of the question.

In the case at bar Strawder last saw Gary standing in a place of safety to the left of the truck as he started to drive through the gap. The record does not show how many feet Strawder drove before he felt the bump as if he had run over something but it

could not have been more than a few feet. In the circumstances presented in this record, an ordinarily prudent man could not be expected to bring his truck to an immediate stop upon hearing a noise on his right running board and seeing a person through a frosted window go down at the time he heard the noise. We conclude Strawder was not negligent, nor was there a last clear chance for him to have discovered Gary's peril in time to have prevented this unfortunate accident. Therefore, the court should have sustained defendant's motion for a directed verdict.

■ The trial judge erred in failing to direct a verdict for defendants. As their motion for a new trial did not ask for judgment notwithstanding the verdict, as they could have under CR 50.02, the judgment is reversed with directions that should the evidence be substantially the same on another trial, the court will direct a verdict for defendants at the conclusion of plaintiffs' evidence. Had defendants seen fit to move the trial judge for a verdict non obstante under CR 50.02, we would have reversed the judgment with directions to enter one for defendants rather than for a new trial. See Clay CR p. 450, author's comment 5; Bowling v. Lewis, Ky., 287 S.W.2d 629.

Judgment reversed.