Lester STEPHENS, Administrator of Gary Don Stephens, Deceased, Appellant,

v.

Robert EADES et al., Appellees.

Court of Appeals of Kentucky.

June 6, 1958.

Wm. F. Threlkeld, Williamstown, Harlan Heilman, Carrollton, for appellant.

Wm. G. Reed, Carrollton, for appellees.

STANLEY, Commissioner.

On the first appeal of this case we reversed a judgment for $10,000 for death on the ground that the evidence was not sufficient to authorize a submission to the jury of the question of negligence of the driver of a truck. We ruled that should the evidence upon another trial be substantially the same, the court should direct a verdict for the defendant. Eades v. Stephens, Ky., 302 S.W.2d 117. This appeal is from a judgment entered upon such a directed verdict. The question before us, therefore, is whether there was any substantial additional evidence tending to prove negligence. If there was not, this judgment must be affirmed under the law of the case as declared in the former opinion. Big Sandy Realty Co. v. Stansifer Motor Co., Ky., 294 S.W.2d 529.

In brief, Gary Stephens, a young man who had been riding with Strawder Breeden on a truck gathering cans of milk from farmers, got out and opened a "wire gap" used as a gate entrance, and the truck drove through slowly. On the former trial, Breeden testified that while he was going two or three mph he "heard a noise on the running board and door," caught a glimpse of a person through a frosted window and then "it disappeared * * * straight down." He didn't stop until he felt a bump, and then he stopped as quickly as he could. He found Stephens "laying behind the truck." Though it was not then definitely stated, it was apparent that the car had run over the boy. On the way to the hospital Stephens had said to Breeden, "It wasn't your fault." On

**202**

this trial Breeden testified that he was moving one or two instead of two or three mph. We do not regard either statement as being anything more than a way of saying that he was barely moving. On this trial Breeden testified that the person on the running board fell with his head toward the rear of the truck, whereas he had previously described him as "going straight down." This time Breeden was more definite in the sequence of events by saying that he had driven ten or fifteen feet after the gap was opened or after he passed through it (it is not clear which) when he got a glimpse of the person on the running board and that he drove three or four feet before the person fell off and seven or eight feet before he felt the bump. This testimony is definite, whereas on the former trial substantially the same thing was implicit in the indefinite description.

New statements of the witness Breeden were that he had been working eleven or twelve hours a day, seven days a week and that he had started on his pickup route about four o'clock that morning and was tired and sleepy, which condition he gave as a reason for not having stopped his truck when he saw the boy on the running board or saw him fall off. He knew, he testified, that the falling body was liable to roll under the rear wheels. Additional evidence is that there was ice on the metal running board. On this trial Breeden testified that on the way to the hospital the Stephens boy had said to him that if it hadn't been for his jacket catching on the wheel, he could have gotten out of the way of the truck.

We regard the additional evidence to be merely cumulative and perhaps more definite, but it is not so material as to justify a different application of the law as stated in the former opinion, namely, that the driver of the truck was not proved to have been negligent, either initially or under the doctrine of the last clear chance.

The judgment is affirmed.