George W. COOPER, III, Administrator of the Estate of Berry Wesley Cooper, Plaintiff-Appellant,

v.

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, et al., Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section at Nashville.

Oct. 15, 1981.

Rehearing Denied Nov. 12, 1981.

Permission to Appeal Denied by Supreme Court Feb. 22, 1982.

Jordan Stokes, III, Nashville, for plaintiff-appellant.

David T. Hooper, Gracey, Maddin, Cowan & Bird, Harry Mittwede, Nashville, for defendants-appellees.

OPINION

CANTRELL, Judge.

The issue in this case involves a question of the duty of care owed by a contracting party (employer) to an employee of an independent contractor where the work contracted out is allegedly dangerous. The Trial Court granted summary judgment for the employer and dismissed the cause. We affirm.

The complaint in this case alleged that the appellant is the administrator of the estate of his son, Barry Wesley Cooper, who was electrocuted while working on a job for Queen's Tree Surgery, Inc. on July 29, 1977. Queen's was operating under a contract with the Electric Power Board of the Metropolitan Government of Nashville and Davidson County (Nashville Electric Service) to perform "tree trimming, clearing of shrubbery, and all other kinds of growing matter" from the lines and equipment of Nashville Electric Service in various locations within its service area.

The complaint alleges that on the date in question a crew from Queen's was trimming trees along Nashville Electric Service's high-voltage power lines on the west side of Franklin Road in Nashville, a short distance south of Caldwell Lane. Barry Wesley Coo-

per's job was to collect the tree branches as they fell to the ground and feed them into a chipping machine. The trimming was done by a workman in a fiber glass bucket suspended at the end of a crane or boom mounted on a truck. In changing the position of the bucket, the boom or crane came in contact with the high-voltage power line, thereby charging the boom and truck with the full voltage of the line. Barry Wesley Cooper touched the truck and was almost instantly killed by electrocution.

The complaint further alleges that the boom and truck were designed so as to insulate the truck from electrically charged wires that might come in contact with the boom but that in some cases the insulating devices had been removed and in others they had been allowed to deteriorate and their effectiveness had been dangerously lowered by the accumulation of dirt, leaves and debris in and around the upper and lower portions of the boom.

The basis for liability of Nashville Electric Service is alleged in Paragraph 22 of the complaint:

Defendant Nashville Electric Service failed to exercise the care resting upon it to ensure its contractor was a proper person to perform an admittedly hazardous and dangerous work and that its equipment was suitable and reasonably safe for the work around the energized power lines of said Service. Nashville Electric Service also failed to exercise due care to see that the work was being performed in a reasonably safe manner and failed to insist that its contractor have its equipment electrically tested although said Service has many items of equipment of similar nature which it periodically tests and maintains in first class condition, and this defendant failed to give its contractor's equipment any inspection whatsoever although it was readily apparent that the equipment was dirty and in need of attention and proper maintenance. Even a most cursory visual inspection of the inside of the lower boom would have revealed that the isolator rods were missing.

In its answer Nashville Electric Service denied that it had the right or duty to dictate to its independent contractor the type, condition, or nature of the equipment the contractor used. Nashville Electric Service further denied that it had the right or duty to inspect the equipment belonging to its independent contractor.

Nashville Electric Service subsequently moved for summary judgment. Both sides filed affidavits which showed the following essential facts:

1. Nashville Electric Service contracted with five tree trimming services for work in various parts of its service area. Queen's was one of the contractors used.

2. The work in question was being performed under a written contract. Barry Wesley Cooper was an employee of Queen's.

3. Queen's had done work for the Nashville Electric Service for twenty years in a satisfactory manner.

4. The contract specifically removed from Nashville Electric Service the right to "direct or control the manner, means and method by which the work shall be accomplished."

5. The contract acknowledged that Queen's was "apprised of, conscious of and understands the imminent danger inherent in the work required" and accepted on behalf of Queen's the "duty and sole responsibility to notify and inform its personnel, employees and subcontractors and to keep them informed."

6. Nashville Electric Service did not inspect nor test any of Queen's equipment, nor did it monitor the work done by Queen's to see that it was performed in a safe manner.

The Trial Judge granted summary judgment for Nashville Electric Service and dismissed the action. From that decision an appeal has been perfected.

■ For the first ground of liability it is alleged that Nashville Electric Service failed to fulfill its duty of care to select a competent contractor to perform the work contemplated by the contract. As to this

issue we are of the opinion that the uncontroverted facts do not disclose any basis for this conclusion. To the contrary, the facts show that Queen's had been performing the same or similar work for Nashville Electric Service for twenty years, apparently without incident. Therefore we conclude that summary judgment was proper on that allegation of negligence.

As to the second ground the complaint alleges that Nashville Electric Service had a duty to see that the work was done in a safe manner and to see that the contractor used equipment which was safe under the circumstances. The appellant does not contend that Queen's was not an independent contractor nor that an employer is ordinarily not liable for the negligent acts of an independent contractor. Rather, it is the insistence of the appellant that since the work involved in this case was attended with a high degree of danger to others, the employer could not contract away its duty of care. That is a recognized exception to the general rule and is noted in 41 Am.Jur.2d *Independent Contractors* § 41 (1968):

> As an exception to the general rule of nonliability of an employer for the torts of an independent contractor, an employer is liable or cannot escape liability for injuries caused by the failure of an independent contractor to exercise due care in the performance of work which is inherently or intrinsically dangerous. Under this exception, the owner or contractee is responsible for injuries to a third person caused by work done by an independent contractor, where the contract directly requires the performance of work inherently or intrinsically dangerous, however skillfully done. The theory upon which this liability is based is that a person who engages a contractor to do work of an inherently dangerous character remains subject to an absolute, nondelegable duty to see that it is performed with that degree of care which is appropriate to the circumstances, or in other words, to see that all reasonable precautions shall be taken during its performance, to the end

that third persons may be effectually protected against injury.

In this case it is arguable that the work being performed by Queen's was not intrinsically or inherently dangerous, since the general rule is that the danger must be involved in the performance of the contract and must result directly from the work to be done and not from the collateral negligence of the contractor. *Id.* However, for the sake of discussion of this question, we assume that the work performed by the contractor was inherently dangerous. This conclusion is bolstered by the reference in the contract to the high degree of danger involved in the work.

Assuming that work involved in this case was inherently dangerous and conceding that an employer may not contract away his liability *to the general public* for harm caused in the performance of that activity, a question remains as to whether that liability extends to *employees of the contractor.* Some courts have held an employer liable to the employee of a contractor for injuries arising in the performance of inherently dangerous work. *Schultz & Lindsay Constr. Co. v. Erickson,* 352 F.2d 425 (8th Cir. 1965); *Chicago Economic Fuel Gas Co. v. Myers,* 168 Ill. 139, 48 N.E. 66 (1897); *Mallory v. Louisiana Pure Ice & Supply Co.,* 320 Mo. 95, 6 S.W.2d 617 (1928). Other courts have made a distinction between the public at large and the employees of the contractor. In those states the employer's liability is only to members of the general public and does not extend to employees of the contractor. *Corban v. Skelly Oil Co.,* 256 F.2d 775 (5th Cir. 1958); *Hurst v. Gulf Oil Corp.,* 251 F.2d 836 (5th Cir.), *cert denied,* 358 U.S. 827, 79 S.Ct. 44, 3 L.Ed.2d 66 (1958); *Welker v. Kennecott Copper Co.,* 1 Ariz.App. 395, 403 P.2d 330 (1965); *Epperly v. Seattle,* 65 Wash.2d 777, 399 P.2d 591 (1965).

This question apparently has not been decided directly in Tennessee although authority for the latter position can be found in the case of *Jones v. City of Dyersburg,* 59 Tenn.App. 354, 440 S.W.2d 809 (1967). In that case an employee of a subcontractor

was injured while working on power lines owned by the City of Dyersburg. In that case the allegations against the City were that it had not provided the workman a safe place in which to work and not that it had a duty to the workman of the subcontractor based on the inherently dangerous nature of the work. However, the Court of Appeals in reversing a judgment for the workman against the City said:

> We hold that the City of Dyersburg was not obligated under its contract nor under its nondelegable duty as a supplier of electricity to supervise the performance of the contract by Safeco and its employees so as to prevent the employees being injured by their own negligence. It would have been impractical and would have in effect negatived the very contract which it awarded Brayton for the City of Dyersburg to have been required to furnish men to supervise all of the phases of the electrical work being done by the subcontractor Safeco so as to prevent Safeco's employees from injuring themselves.

59 Tenn.App. at 392–93, 440 S.W.2d at 826.

We think this is authority for the rule of nonliability of an employer to employees of a contractor even though the contract involves work that is inherently or intrinsically dangerous. We also think this is the preferable rule. Otherwise, an employer having work to be performed of an inherently dangerous nature and wishing to employ a contractor skilled in the performance of such work in order to minimize the danger to the public at large would nevertheless be liable to the employees of the contractor for the contractor's negligence. A homeowner would be liable to the employees of an electrical contractor for failure to inspect the equipment of the contractor to make sure that it was safe.

The employees of the contractor are not without a remedy. In most cases they will be covered by worker's compensation which covers them regardless of their own negligence or they will have an action against their employer.

Therefore, we conclude that the liability of an employer contracting for the performance of inherently dangerous work does not extend to employees of the contractor. The Trial Court was correct in granting summary judgment in favor of Nashville Electric Service. Therefore, the decision of the Trial Court is affirmed and the cause is remanded to the Trial Court for any further necessary proceedings. The costs are taxed to the appellant.

AFFIRMED AND REMANDED.

TODD, P. J. (M.S.), and LEWIS, J., concur.

## OPINION ON PETITION TO REHEAR

CANTRELL, Judge.

The appellant has filed an earnest Petition to Rehear. Upon consideration of the petition and the entire record, we are of the opinion that the petition is without merit and should be overruled.

TODD, P. J. (M.S.), and LEWIS, J., concur.