Jere ELLIS, as Administrator of the Estate of Jere Martin Ellis, Deceased; Mary Ann Lacy Ellis, Individually, as widow of Jere Martin Ellis, Deceased, and as Mother and Next Friend of Robert Allen Ellis, Minor Son of Jere Martin Ellis, Deceased; Sheila Myers Ellis Pankey, as Mother and Next Friend of Elizabeth Suzanne Ellis, Minor Daughter of Jere Martin Ellis, Deceased; Karen Lorraine Ellis Burden, as Mother and Next Friend of Angela Lorraine Ellis and Veronica Anne Ellis, Minor Daughters of Jere Martin Ellis, Deceased, Plaintiffs–Appellants,

v.

CHASE COMMUNICATIONS, INC.; Chase Family Limited Partnership # 7, Defendants–Appellees,

Nationwide Tower Company, Inc., Third–Party Defendant.

No. 93–6465.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 31. 1995.

Decided Aug. 25, 1995.

Ralph F. Mitchell (briefed), Rendings, Fry, Kiely & Dennis, Cincinnati, OH, Ralph I. Lawson (argued and briefed), Lawson & Lannom, Dyersburg, TN, Steven L. West (briefed), West & West, McKenzie, TN, for plaintiffs-appellants.

William B. Walk, Jr., Hardison Law Firm, Memphis, TN, Jerry O. Potter (argued and briefed), Memphis, TN, for defendants-appellees.

Before: WELLFORD, BOGGS, and SILER, Circuit Judges.

SILER, J., delivered the opinion of the court, in which BOGGS, J., joined. WELLFORD, J. (pp. 478–83), delivered a separate concurring opinion.

SILER, Circuit Judge.

Plaintiffs, the administrator of the estate and next of kin of the deceased, Jere Martin Ellis, appeal the district court's grant of summary judgment in favor of defendant, Chase Communication Co. ("Chase"). The district court held that Chase owed no duty to protect Ellis, an employee of an independent contractor, from obvious and apparent dangers on its property, even though Ellis was engaged in inherently dangerous work when he fell off a transmission tower. For reasons stated herein, we affirm.

I.

Chase was the owner of a television tower located in Shelby County, Tennessee. On October 7, 1991, Chase contracted with Nationwide Tower Company to clean and paint the tower. Nationwide then subcontracted the job to Charles Raines. The subcontract with Nationwide provided that Raines would furnish all labor, materials, equipment, and supervision, and that the work would be performed in accordance with applicable Occupational Safety and Health Act ("OSHA") rules and regulations.

Ellis was an employee of Raines. On October 25, 1991, Ellis fell 985 feet to his death while painting the tower. At the time of the fall, his only protective equipment was a short belt safety harness, which Ellis had unhooked in order to change positions on the tower.

Suit was filed in the district court against Chase, based on the court's diversity jurisdiction. The court granted summary judgment for Chase, finding that Ellis was engaged in an inherently dangerous activity, but that he was not an actual or statutory employee of Chase. The court concluded that OSHA does not "enlarge the responsibility of the defendants for the death of [Ellis] ... and that the plaintiffs do not have a cause of action under OSHA as the act does not create a private right of action for violation of its terms." The court then relied on Tennessee law in ruling that "the defendants do not have any liability for the death of ... an employee of an independent contractor, even though [Ellis] ... was engaged in an inherently dangerous work." This appeal ensued.

II.

Summary judgment is appropriate only if the record clearly demonstrates that there exists no issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Deaton v. Montgomery County*, 989 F.2d 885 (6th Cir.1993). The district court determined that, as a matter of law,[1] Chase owed no duty to Ellis, because Ellis was not an employee of Chase at the time of the accident. Additionally, the court held that Chase had violated no state or federal statute that would render it liable to Ellis. We review the district court's grant of summary judgment *de novo*. *Deaton*, 989 F.2d at 887.

Plaintiffs contend that summary judgment in favor of Chase on the duty issue was inappropriate. They cite *Inman v. Aluminum Co. of America*, 697 S.W.2d 350 (Tenn.Ct.App.1985), in support of their assertion that Chase owed a duty to Ellis to provide a reasonably safe workplace. They further contend that this duty was nondelegable, due to the intrinsically dangerous na-

---

**1.** Because the court's jurisdiction is based solely on diversity of citizenship, we look to the substantive law of Tennessee. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

ture of the work performed. *See Jones v. Dyersburg*, 59 Tenn.App. 354, 440 S.W.2d 809 (1967); *Shell Oil Co. v. Blanks*, 46 Tenn.App. 539, 330 S.W.2d 569 (1959); *International Harvester Co. v. Sartain*, 32 Tenn.App. 425, 222 S.W.2d 854 (1948).

■ Plaintiffs' argument, however, is based on a misconstruction of the holding of those cases. *Inman*'s imposition of a duty of care on landowners to provide a reasonably safe workplace is based on premises liability; such duty is limited to a duty of the owner to warn of *latent* defects. *Inman* clearly holds that an owner is not subject to liability for failure to warn or protect the employee of an independent contractor against obvious, apparent, or known dangers. *Inman*, 697 S.W.2d at 353, *citing Dempster Bros., Inc. v. Duncan*, 61 Tenn.App. 88, 452 S.W.2d 902 (1969); *Shell Oil Co.*, 330 S.W.2d at 571. *See also Jackson v. Tennessee Valley Auth.*, 413 F.Supp. 1050 (M.D.Tenn.1976), *aff'd*, 595 F.2d 1120 (6th Cir.1979). Plaintiffs have presented no evidence of Chase's failure to warn Ellis of a latent defect in the tower, nor have they alleged that Ellis's fall was caused by a latent defect. On the contrary, the danger that befell Ellis was obvious.

■ As for the nondelegable duty of an owner to protect against harm cause by inherently dangerous work, Tennessee law is clear: such duty does not extend to the employees of the contractor performing such work. *See Cooper v. Metropolitan Gov't of Nashville and Davidson County*, 628 S.W.2d 30, 32–33 (Tenn.Ct.App.1981). *Cooper*, which cites *Jones v. Dyersburg*,[2] expressly states that "the liability of an employer contracting for the performance of inherently dangerous work does not extend to employees of the contractor." *Id.* at 33. Although *Cooper* modified the general rule of no liability of a employer for the torts of an independent contractor, it extended liability to third par-

ties only. If liability were extended to the employees of an independent contractor, the court pointed out, an employer who employed a skilled contractor in an effort to minimize the risk of harm to the public posed by work of an inherently dangerous nature would still be liable to the employees of the contractor for the contractor's negligence. For example, "[a] homeowner would be liable to the employees of an electrical contractor for failure to inspect the equipment of the contractor to make sure that it was safe." *Id.* at 33.

■ Assuming, *arguendo*, that the work performed by Ellis was inherently dangerous, Chase should not be penalized for attempting to minimize the risk of harm by hiring a company specializing in such work. Chase's contract with Nationwide Tower Company specified that Nationwide would meet the proper safety, expertise, insurance, and OSHA standards. Moreover, it is undisputed that neither Chase nor its employees exercised any control or supervision over the painting of the tower.[3] Absent evidence of actual control, the owner of the property or the general contractor owes no duty of care to the employees of an independent contractor, aside from the duty to warn of latent dangers, as stated. *See Johnson v. EMPE, Inc.*, 837 S.W.2d 62, 65 (Tenn.Ct.App.1992) (duty to exercise ordinary care to avoid exposing employees to an unreasonable risk of harm is owed by person remaining in complete control of the premises where the accident occurred).

Finally, plaintiffs assert an alternative basis for liability: Chase's alleged failure to comply with federal safety standards, as incorporated into Tennessee's OSHA. *See* Tenn.Code Ann. § 50–3–101 *et seq.* The district court, citing *Jeter v. St. Regis Paper Co.*, 507 F.2d 973 (5th Cir.1975); *Russell v. Bartley*, 494 F.2d 334 (6th Cir.1974); *Cochran v. International Harvester Co.*, 408 F.Supp. 598 (W.D.Ky.1975); and *Hare v.*

---

2. *Sartain* and *Shell Oil*, also cited by plaintiffs in support of expansion of an owner's nondelegable duty to independent contractors, are actually "premises liability" cases, addressing the general duty of a landowner to warn or protect persons lawfully on the property from latent hazards. *See Hutchison v. Teeter*, 687 S.W.2d 286, 288 (Tenn.1985). These cases are not in conflict with *Cooper*.

3. Plaintiffs argue that "Chase specifically assumed the responsibility of maintenance and the supervision of maintenance" of the tower. This refers, however, to the allocation of responsibility between Chase and its parent company in the lease of the tower, *not* the contracts governing the painting of the tower between Chase and Nationwide, or Nationwide and Raines.

*Federal Compress and Warehouse Co.,* 359 F.Supp. 214 (N.D.Miss.1973), held that Chase owed Ellis no duty under OSHA, because Ellis was not an employee of Chase. The district court adhered to Tennessee's rule of no liability to employees of independent contractors, stating that OSHA and its regulations "do not enlarge the responsibility of [Chase] for the death of ... an employee of an independent contractor and that ... the act does not create a private right of action for violation of its terms."

■ The plaintiffs argue that, in determining whether Chase owed Ellis a duty under Tennessee law, the district court failed to address a case in which this court held that OSHA imposes a duty on employers with respect to all employees, whether its own or those of an independent contractor. *See Teal v. E.I. DuPont de Nemours & Co.,* 728 F.2d 799 (6th Cir.1984). Plaintiffs' reading of *Teal,* however, is misguided. The language of *Teal* does not change the law of this circuit that OSHA does not create a private right of action. *See Minichello v. U.S. Industries, Inc.,* 756 F.2d 26 (6th Cir.1985) (OSHA can never provide a basis for liability); *Russell,* 494 F.2d at 336 (OSHA does not create a private civil remedy). *Teal* does establish, however, that, under certain circumstances, an OSHA violation may be conclusive evidence of negligence, or negligence *per se.*

In *Teal,* an employee of an independent contractor brought suit against the DuPont company to recover for injuries sustained as a result of an accident occurring at DuPont's plant. DuPont allegedly breached the specific duty imposed on employers by 29 U.S.C. § 654(a)(2), set forth at 29 C.F.R. § 1910.27(c)(4), governing ladder specifications. DuPont argued that the duty imposed on employers by OSHA was limited to its own employees, and did not extend to the employees of independent contractors.

■ *Teal* held that even though OSHA's "general duty" clause, 29 U.S.C. § 654(a)(1), imposes a duty upon employers to protect the safety of its own employees, its "specific duty" clause, § 654(a)(2), may impose a duty to protect a broader class of employees. *Id.* at 803. The general duty clause requires every employer to use reasonable care to protect his own employees from recognized hazards likely to cause death or serious bodily injury, regardless of whether the employer controls the workplace, is responsible for the hazard, or has the best opportunity to abate the hazard. *Id.* at 804. In contrast, the class of employers who owe a duty under the specific duty clause is defined with reference to control of the workplace and opportunity to comply with OSHA regulations, and the employer's responsibilities depend upon which provision the employer is accused of breaching.

■ *Teal* acknowledged, however, that a breach of OSHA's specific duty clause is negligence *per se* only if the party injured is a member of the class of persons OSHA was intended to protect. Thus, *Teal* does not impose an unlimited duty on an employer to protect anyone who happens upon any portion of the employer's property. Rather, the court stated:

> If the special duty provision is logically construed as imposing an obligation on the part of employers to protect all of the *employees who work at a particular job site,* then the employees of an independent contractor who work on the premises of another employer must be considered members of the class that [the special duty provision] was intended to protect.

*Id.* at 804 (emphasis added). A critical question in determining whether an OSHA violation is negligence *per se,* therefore, is whether the defendant is an employer subject to the OSHA regulation in question.

The *Teal* court never addressed this question, as the employer, DuPont, conceded that it owed a duty to comply with the specific OSHA regulation in question, and that it breached that duty. The court thus held that the employee of an independent contractor performing work at DuPont's plant—the particular job site on which DuPont had a duty to protect its own employees—was a member of the class the particular OSHA regulation was intended to protect. *Teal* acknowledged that an employer is obligated to protect all employees working at its workplace only "once [that] employer is deemed responsible for complying with OSHA regulations," *Teal,* 728 F.2d at 805. *Teal,* there-

fore, merely extends to employees of an independent contractor the same duty owed to one's own employees.

*Teal* does not allow conversion of an OSHA violation to a private cause of action. Rather, *Teal* merely applies to OSHA infractions the general rule of Tennessee law, that breach of a statutory duty is negligence *per se* if the injured party is a member of the class the statute was meant to protect. *Teal,* 728 F.2d at 803 n. 4. *See Bellamy v. Federal Express Corp.,* 749 S.W.2d 31, 34–35 (Tenn. 1988) (OSHA violation is negligence *per se* ). *See also Wren v. Sullivan Electric, Inc.,* 797 F.2d 323 (6th Cir.1986); *Angel v. United States,* 775 F.2d 132, 144 (6th Cir.1985) (analogizing to *Teal* under Ohio Law).

■ The alleged OSHA violation in this case does not constitute negligence *per se.* The facts of this case are easily distinguished from *Teal.* Plaintiffs have presented no evidence that the television tower, like the Du-Pont plant in *Teal,* is a regular job site on which Chase had a duty to protect its own employees. The tower lease agreement, whereby Chase merely allocated the expense of the tower and its maintenance to one of its subsidiaries, is insufficient to establish that Chase was an "employer" with regard to the tower site, rendering it subject to OSHA. Chase's status as an employer in other contexts does not change the fact that, in regard to the tower, Chase was no different than a property owner hiring a contractor to perform work on its property.

■ Moreover, even if an OSHA violation is evidence of Chase's negligence (or conclusive evidence, in the case of negligence *per se* ), Chase must owe a duty to Ellis under a theory of liability independent of OSHA, as OSHA does not create a private right of action. OSHA regulations can never provide a basis for liability. *Minichello,* 756 F.2d at 29. The Act itself explicitly states that it is not intended to affect the civil standard of liability. 29 U.S.C. § 653(b)(4). Plaintiffs have failed to establish a theory under which Chase owed a duty to Ellis, as, under Tennessee law, the defendant owed no duty to protect Ellis from an obvious and apparent danger.

**AFFIRMED.**

WELLFORD, Circuit Judge, concurring.

While I agree with the majority that we should **AFFIRM** the decision of the district court, I write separately to clarify the apparent conflict between *Minichello v. United States Industries, Inc.,* 756 F.2d 26 (6th Cir. 1985) and *Teal v. E.I. DuPont de Nemours & Co.,* 728 F.2d 799 (6th Cir.1984), which bear upon the issues in this case.

As an initial matter, however, I am in agreement with the majority's interpretation of Tennessee law. *Cooper v. Metropolitan Government of Nashville & Davidson County,* 628 S.W.2d 30, 33 (Tenn.Ct.App.1981) clearly holds that the owner of property owes no duty of care to the employees of an independent contractor hired to perform inherently dangerous work on the owner's property.[1] Because plaintiffs cannot recover on a

---

1. I believe *Cooper* controls this case, but plaintiffs' argument is not without some support in the Tennessee decisions. *Jones v. City of Dyersburg,* 59 Tenn.App. 354, 440 S.W.2d 809, 810 (1967), an earlier case, involved a personal injury action brought against a city power company after an independent contractor's employee was electrocuted by the defendant's power lines. On appeal of a bench verdict for the plaintiff, defendant argued that the trial court erred in overruling its demurrer that it owed no duty of care to the employees of the independent contractor. *Id.* 440 S.W.2d at 813. The Tennessee Court of Appeals disagreed, holding that the defendant "was under a non-delegable duty to use the highest degree of care to prevent the plaintiff or other persons on its premises from being injured by the electrical current." *Id.* Nevertheless, the Tennessee Court of Appeals reversed the judgment of

the trial court because the defendant "was not obligated under its contract *nor under its nondelegable duty* as a supplier of electricity to supervise the performance of the contract by [the defendant] and its employees so as to prevent the employees [from] being injured by their own negligence." *Id.* 440 S.W.2d at 826 (emphasis added). *Jones'* result seems inconsistent with the language quoted, since the court allowed the employer to delegate what it held could not be delegated. Yet, in *Cooper,* the Tennessee Court of Appeals resolved this inconsistency by acknowledging that an employer owes a nondelegable duty to the *general public* to prevent injury as a result of an inherently dangerous activity performed on its property, but that this duty does not extend to the employees of an independent contractor. *Cooper,* 628 S.W.2d at 32–33.

claim of negligence unless they establish that defendants owed Ellis a duty of care, plaintiffs argue alternatively that statutory work place safety standards supplement the common law. Plaintiffs specifically rely on 29 U.S.C. § 654(a)(1)–(2) of the Occupational Safety and Health Act (OSHA) and its Tennessee counterpart, TOSHA, which is located at Tennessee Code Annotated section 50–3–105(1)–(2). Plaintiffs contend that Chase violated the safety standards set forth in these statutes and that, under Tennessee law, such a violation establishes *per se* negligence.

Like the majority, I believe the district court correctly held that OSHA does not create a private right of action against employers in favor of covered employees. *E.g., Russell v. Bartley,* 494 F.2d 334, 335–36 (6th Cir.1974) (per curiam); *see also Jeter v. St. Regis Paper Co.,* 507 F.2d 973, 976–77 (5th Cir.1975). To the extent plaintiffs seek to hold defendants liable under *federal* law, they cannot succeed. As I understand plaintiffs' argument, however, they do not contend that OSHA creates a private right of action. Rather, plaintiffs argue that, under Tennessee law, violations of state or federal safety standards constitute negligence *per se* and preclude the grant of summary judgment. In other words, plaintiffs assert that a violation of the OSHA and TOSHA standards does not create a federal cause of action but merely establishes duty and breach for a common law negligence claim. Tennessee law seems to provide that a violation of federal or state safety standards may constitute *per se* negligence if the person injured as a result of the violation is a member of the class of persons the statute or regulation was intended to protect. *See, e.g., Bellamy v. Federal Express Corp.,* 749 S.W.2d 31, 35 (Tenn.1988); *Traylor v. Coburn,* 597 S.W.2d 319, 322 (Tenn.Ct.App.1980). To prove negligence *per se,* plaintiff must show 1) that defendants violated a statutory safety standard, and 2) that plaintiff was within the class of persons the safety standard sought

to protect.[2] Plaintiffs alleged in their complaint that Chase violated OSHA and TOSHA standards. Defendants did not rebut these allegations as required by Federal Rule of Civil Procedure 56(c) but challenged instead the legal rationale for plaintiffs' claim. Instead of denying that they failed to comply with OSHA regulations or that they had an obligation to do so, defendants denied that they had an obligation to comply with OSHA regulations *for the benefit* of Ellis. In essence, defendants argued that, since Ellis was not their employee, he was not within the class of persons protected by the OSHA regulations.

We have indicated approval of the use of an employer's violation of OSHA standards as a basis for a finding of negligence *per se* under state law. *E.g., Wren v. Sullivan Elec., Inc.,* 797 F.2d 323, 325–27 (6th Cir. 1986); *Angel v. United States,* 775 F.2d 132, 144 (6th Cir.1985); *Teal v. E.I. DuPont de Nemours & Co.,* 728 F.2d 799, 802–805 (6th Cir.1984).[3] In *Teal,* DuPont hired a contractor to dismantle and remove hydraulic barriers from one its Tennessee plants. *Teal,* 728 F.2d at 801. The plaintiff, an employee of the independent contractor, injured himself when he fell seventeen feet from a ladder located in DuPont's plant. *Id.* At trial of the plaintiff's diversity action against DuPont, the district court refused to instruct the jury that, under Tennessee law, DuPont was *per se* negligent if it found DuPont violated OSHA regulations with regard to the placement of the ladder. *Id.*

On appeal, this court noted that Tennessee law establishes that a breach of a duty of care imposed by statute or regulation may be negligence *per se,* if the party harmed by the breach is within the class of persons the statute or regulation was intended to protect. *Id.* at 802 (citing *Traylor,* 597 S.W.2d at 322). Consequently, the first question the *Teal* court addressed was whether OSHA imposed

---

**2.** Proving negligence *per se* does not establish liability since a plaintiff must still prove proximate cause and damages in order to recover against a defendant. *Bellamy,* 749 S.W.2d at 35. A plaintiff who successfully establishes negligence *per se,* however, has made a sufficient showing to overcome summary judgment. *Id.*

**3.** Following our *Wren* decision, the Tennessee Supreme Court also held that a proven violation of OSHA and TOSHA indicates negligence *per se* under Tennessee common law. *Bellamy,* 749 S.W.2d at 34–35.

a duty of care on DuPont. *Teal* explained that Congress imposed two distinct duties on employers under OSHA. OSHA § 654(a) provides as follows:

**Duties of employers and employees**

(a) Each employer—

(1) shall furnish to each of *his employees* employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;

(2) shall comply with occupational safety and health standards promulgated under this chapter.

29 U.S.C. § 654(a)(1)–(2) (emphasis added). According to *Teal*, § 654(a)(1) imposed on employers a "general" duty to provide a safe work place, while subsection (a)(2) imposed a "specific" duty to comply with the regulations applicable to the employer's industry under OSHA. *Teal*, 728 F.2d at 803. Section 654(a)(1) would seem to indicate a duty to employees, not to others.[4]

*Teal* concluded that Congress intended the general duty embodied in § 654(a)(1) to operate as a catch all protection of "reasonable care," which every American employer owed to *their* employees. *Id.* at 804. Congress, on the other hand, intended the specific duty of subsection (a)(2) to address identifiable dangers which the Department of Labor anticipated might arise in a given industry. *Id.* In addition, *Teal* found that Congress did not limit the protection of the specific duty clause in subsection (a)(2) to the employees of the employer. *Id.* Rather, *Teal* concluded that the employer's obligation to comply with specific OSHA regulations was for "the special benefit of *all* employees, including the employees of an independent contractor, who perform work at another employer's workplace." *Id.* (emphasis in original). Because plaintiff was within the class of persons

which Congress intended to protect by the enactment of § 654(a)(2), and because DuPont's breach of its regulatory duty constituted negligence *per se* under Tennessee law, this court reversed the district court. *Id.* at 805. *See also Wren*, 797 F.2d at 325–27 (citing *Teal* and affirming grant of summary judgment to plaintiff because OSHA regulation placed on the defendant a duty of care and, under Tennessee law, defendant's violation of that duty was negligence *per se* ); *Angel*, 775 F.2d at 144 (citing *Teal* and remanding to the district court with instructions to consider whether the government's violation of the OSHA regulations constituted negligence *per se* under Ohio law).

The majority distinguishes *Teal* from the case at bar on the grounds that defendants were not "employers" within the meaning of OSHA and, therefore, had no obligation to comply with OSHA standards. I have difficulty distinguishing from the instant case on this basis. In OSHA, Congress expressly defined the term employer to mean "a person engaged in a business affecting commerce who has employees." 29 U.S.C. § 652(5). The Tennessee General Assembly adopted a similarly broad definition of the term employer as meaning any "person engaged in a business who has one (1) or more employees." TENN.CODE ANN. § 50–3–103(5). Defendants concede that they are engaged in a business that affects commerce and that they have employees.

The majority has apparently accepted defendants' contention that OSHA's standards do not apply to their relationship with Ellis because he was not *their* employee. Defendants cite several OSHA regulations in support of this proposition. For example, defendants point to 29 C.F.R. § 1926.16(b) which provides that "[b]y contracting for full performance of a contract subject to [§] 107 of the Act, the prime contractor assumes all obligations prescribed as employer obli-

---

4. *Teal* noted that the plaintiff's complaint alleged only that DuPont did not comply with specific OSHA regulations with regard to the placement of the ladder in DuPont's plant. *Teal*, 728 F.2d at 804. Since the plaintiff did not allege that DuPont violated the general duty of care embodied in § 654(a)(1), the court held plaintiff could not rely on the general duty clause. *Id.* *Teal* did note that § 654(a)(1) expressly provided that an employer owes this general duty "to his employ-

ees" only. *Id.* (citing 29 U.S.C. § 654(a)(1)). Since plaintiff was not an employee of DuPont, arguably he was not within the class of persons intended by Congress to be protected by the "general" duty clause. *Id.* *Teal*, however, specifically declined to resolve whether Congress enacted the "general" duty provision of subsection (a)(1) *solely* for the benefit of the employer's employees. *Id.* at 804 n. 8.

gations under the standards contained in this part, whether or not he subcontracts any part of the work." Defendants further note that the term employer is defined as any "contractor or subcontractor within the meaning of the Act and of this part." 29 C.F.R. § 1926.32(k). According to defendants, these regulations indicate that Congress intended for employers to be exempt from these safety standards when the employer has hired a general contractor to perform the covered employment. Since Chase served as neither prime contractor nor subcontractor, defendants reason that OSHA standards may apply to Nationwide or Raines but not to them.

29 C.F.R. § 1910.12(c) refuses, however, to adopt the definitions of part 1926 upon which defendants rely.[5] Part 1926 is entitled "Safety and Health Regulations for Construction"[6] and it has three subparts. Subparts A and B provide general definitions and rules of construction, while subpart C provides substantive safety standards for the construction industry. The Department of Labor did not promulgate part 1926 pursuant to OSHA. 29 C.F.R. § 1910.12(c). Rather, part 1926 implements the Construction Safety Act, see 40 U.S.C. §§ 333 et seq., which establishes safety standards for construction projects financed by federal dollars. Id. OSHA, however, sets general safety standards for the private construction industry (i.e., construction work that does not involve federal financing). 29 C.F.R. § 1910.12(c). Section 1910.12(c) indicates that the Department of Labor incorporated into OSHA many of the substantive safety standards set out in subpart C, but declined to incorporate the definitions and rules of construction set forth

in subparts A and B. Id. Because defendants' definition of an "employer" depends on a regulation—§ 1926.16(b)—located in subpart B of part 1926, that definition is not applicable to OSHA. Brock v. Cardinal Indus., Inc., 828 F.2d 373, 377 n. 7 (6th Cir. 1987) ("Section 1910.12(c) provides that the regulations in Subpart B of Part 1926 ... are not incorporated as construction safety and health standards under [OSHA].... The OSH Act ... was enacted under the Commerce Clause, and the jurisdictional restrictions of the Construction Safety Act are irrelevant to determining which employers are covered by the OSH Act.").

Moreover, the majority's suggestion that defendants were not "employers" because Ellis was not their employee confuses two issues. The first is whether defendants were "employers" that were legally obligated to comply with OSHA; the second is whether defendants' failure to comply with OSHA violated a duty owed to Ellis. The majority implies that the answer to the second question affects the answer to the first. While we could decide that the employee of an independent contractor cannot hold the employer liable for failing to comply with OSHA regulations—though this would contradict Teal—this is entirely different from holding that the employee of the independent contractor cannot recover because OSHA regulations do not apply at all. I believe that the plain language of OSHA and TOSHA indicate that defendants were "employers" within the meaning of both Acts. As such, they were subject to the safety standards of both Acts. But, the question remains how a violation might affect plaintiffs' ability to recover civil damages from these defendants.

---

**5.** Section 1910.12(c) states in pertinent part:
(c) **Construction Safety Act distinguished.** This section adopts as occupational safety and health standards under [OSHA] the standards which are prescribed in Part 1926 of this chapter. Thus, the standards (substantive rules) published in Subpart C and the following subparts of Part 1926 of this chapter are applied. This section does not incorporate Subparts A and B of Part 1926 of this chapter. Subparts A and B have pertinence only to ... the Construction Safety Act. For example, the interpretation of the term "subcontractor" in paragraph (c) of § 1926.13 of this chapter is significant in discerning the coverage of the Construction Safety Act and duties thereunder.

However, the term "subcontractor" has no significance in the application of [OSHA], which was enacted under the Commerce Clause and which establishes duties for "employers" which are not dependant for their application upon any contractual relationship with the Federal Government or upon any form of Federal financial assistance.
29 C.F.R. § 1910.12(c).

**6.** At the time of the decedent's death, he was painting a television tower. OSHA regulations include "painting and repair" within the definition of construction work. 29 C.F.R. § 1910.12(b).

*Teal* and its progeny would seem to indicate that Chase owed Ellis a specific duty, under 29 U.S.C. § 654(a)(2), to comply with the OSHA regulations at issue in this case. *Teal* also seems to hold that, under Tennessee law, plaintiffs can use defendants' alleged failure to comply with the specific OSHA regulations as a means to prove *per se* negligence. Thus, unless OSHA prohibits the use of these standards to prove *per se* negligence, *Teal* would require reversal of summary judgment.

Section 653(b)(4) of OSHA states that "[n]othing in this chapter shall be construed ... to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers." 29 U.S.C. § 653(b)(4). This provision does not simply prohibit the creation of a federal right of action; it also prohibits OSHA's standards from "enlarging" or "affecting" the "common law ... duties, or liabilities of employers." *Id.* Accordingly, in *Minichello v. United States Industries, Inc.,* 756 F.2d 26, 29 (6th Cir.1985), we barred the use of OSHA standards to establish a product's defective condition in a strict liability action. We explained that, "[i]f knowledge of the regulations leads the trier of fact to find a product defective, the effect is to impermissibly alter the civil standard of liability." *Id.* We held that "OSHA regulations can *never provide a basis for liability* because Congress has specified that they should not." *Id.* (emphasis added). *See also Bailey v. V & O Press Co.,* 770 F.2d 601, 608–609 (6th Cir.1985).

As a consequence of § 653(b)(4) and *Minichello,* I conclude that plaintiffs' argument must fail. If a violation of OSHA standards can serve as the predicate for a finding of *per se* negligence under Tennessee law, then OSHA has certainly "affected" the employer's common law liability and duty of care. This is a result that OSHA and *Minichello* prohibit. Other courts have also recognized that allowing OSHA standards to be used to establish a common law or statutory duty of care violates § 653(b)(4). *E.g., Albrecht v. Baltimore & Ohio R.R. Co.,* 808 F.2d 329, 332–33 (4th Cir.1987); *Hebel v. Conrail, Inc.,* 475 N.E.2d 652, 657–58 (Ind.1985).

For example, in *Ries v. National R.R. Passenger Corp.,* 960 F.2d 1156 (3d Cir.1992),

the United States Court of Appeals for the Third Circuit held that § 653(b)(4) prohibited an employee from using an employer's violation of OSHA standards to show negligence *per se* under the Federal Employers Liability Act (FELA). FELA, like Tennessee common law, provides that an employer who violates a worker safety statute is guilty of *per se* negligence. *Kernan v. American Dredging Co.,* 355 U.S. 426, 432–33, 78 S.Ct. 394, 398, 2 L.Ed.2d 382 (1958). In *Ries,* the plaintiff argued that the employer was guilty of *per se* negligence under FELA because it failed to comply with numerous OSHA regulations. *Ries,* 960 F.2d at 1158. In support of this contention, plaintiff cited *Pratico v. Portland Terminal Co.,* 783 F.2d 255 (1st Cir.1985). *Pratico* held that using an OSHA violation to establish negligence *per se* under FELA did not contradict § 653(b)(4) because, in that context, OSHA does not enlarge an employer's liability; it only defines the existing duty of care. *Id.* at 265, *cited in Ries,* 960 F.2d at 1161. Citing our decision in *Minichello,* the Third Circuit disagreed, noting that "[i]f a violation of an OSHA regulation could constitute negligence per se ... under the FELA, it would be almost axiomatic that the effect would be to 'enlarge or diminish or affect' the statutory duty or liability of the employer." *Ries,* 960 F.2d at 1162, 1163. The court added that, "[e]ven if we agreed with Ries' argument that imposing negligence per se for an OSHA violation would not 'enlarge' employers' liability, since it merely defines an existing duty, we are hard pressed to say that it would not 'affect' liability." *Id.* at 1162.

I agree with the Third Circuit's reasoning, which is based upon *Minichello.* It strains logic and the English language to suggest that OSHA standards can establish a common law duty of care and still not "affect" an employer's common law duties or civil liability. The use of OSHA standards in this case would actually "enlarge" defendants' liability. Tennessee common law precludes imposing liability on an employer for injuries sustained by an employee of an independent contractor who performs an inherently dangerous task on the employer's property. *Cooper,* 628 S.W.2d at 33. Therefore, if we allowed plaintiffs to employ OSHA as a vehicle to impose on Chase a duty of care that would otherwise

not exist, then OSHA would certainly enlarge defendants' liability under Tennessee law. Thus, based upon *Minichello,* I believe the district court correctly granted defendants' summary judgment.

I find it very difficult to reconcile § 653(b)(4) and *Minichello* with our decision in *Teal.* Neither *Teal, Angel* nor *Wren* discuss or even cite 29 U.S.C. § 653(b)(4). Likewise, none of these cases cite *Minichello* or its progeny. Yet, as the Third Circuit persuasively explained in *Ries,* allowing the use of OSHA standards to establish *per se* negligence under the common law violates § 653(b)(4). *Ries,* 960 F.2d at 1162.[7] Accordingly, I believe *Minichello* controls this case and that *Teal* and its progeny should be narrowly limited to their facts. Section 653(b)(4) prevents the use of an OSHA violation to establish negligence *per se* under the common law. I therefore concur in the result to **AFFIRM** summary judgment.

---

**7.** The Tennessee Supreme Court in *Bellamy* followed *Wren* in holding that a violation of OSHA and TOSHA standards constitutes negligence *per se* under the common law; however, the *Bellamy* court acknowledged the inconsistency between *Wren* and *Minichello. Bellamy,* 749 S.W.2d at 34 (citing *Minichello* and commenting that "[a] number of courts have held that such violations constitute no more than evidence of negligence, in view of the expressly declared intention of Congress that OSHA is not designed to affect the civil standard of liability").