IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 19, 2000 Session

# DONNIE WAYNE JOHNSON, JR. v. CENTEX FORCUM LANNOM, INC., ET AL.

### Direct Appeal from the Circuit Court for Obion County
### No. 7-714    William B. Acree, Jr., Judge

---

### No. W2000-00072-COA-R9-CV - Filed November 7, 2000

---

This appeal arises from an injury by Worker who fell through a hole in the roof while working on a construction site. Worker brought suit against the Owner, the General Contractor and Builder, who through its construction of precast concrete panels had created the hole. The trial court granted Owner and General Contractor summary judgment on the basis that both were acting in the capacity of a general contractor and were thus exempt from suit under the workers' compensation statutes. Builder, even through it no longer had control of the area where Worker was injured, was denied summary judgment on the basis that OSHA regulations created a non-delegable duty to prevent injuries. We affirm the trial court's granting of summary judgment to Owner and General Contractor. We reverse the trial court's denial of summary judgment for Builder, finding that OSHA regulations do not create a duty for Builder.

### Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed in part; Reversed in part; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S. and FRANKLIN MURCHISON, SP. J., joined.

Jeffrey A. Garrety, Jackson, Tennessee, and Tanda R. Grisham, Jackson, Tennessee, for the appellant Donnie Wayne Johnson, Jr.

DeWitt M. Shy, Jr., Memphis, Tennessee, and G. Bailey Leopard, Memphis, Tennessee, for the appellant, Coreslab Structures, Inc.

Carl Wyatt, Jr., Memphis, Tennessee, and James F. Horner, Memphis, Tennessee, for the appellees, Centex Forcum Lannom, Inc. and Tyson Foods, Inc.

**OPINION**

In 1996, Tyson Foods, Inc. (Tyson) began construction of a poultry food products plant in Obion County, Tennessee. It contracted with several other companies to complete various tasks at the plant, as well as planning to do some work "in-house." Among those companies contracted to work on the site was Centex Forcum Lannom, Inc. (Centex), which was acting as a general contractor on the construction of the poultry processing facility. Centex hired J.E. Campbell (Campbell) as a sub-contractor to complete necessary work on the project site. Also working on the site was Coreslab Structures (Okla), Inc. (Coreslab). Coreslab was to erect precast concrete panels on the site under a separate contract with Tyson.

While Coreslab was completing its work, it was discovered that the erection of the panels left several dangerous holes in the roof. As the holes were destined to be filled by equipment during the construction, they required a temporary cover to make the area safe. Communication between Tyson, Coreslab and Centex revealed that the covering of these holes was not addressed in any contract. While Tyson did request the holes to be covered, both the date of the request and whether Tyson initially directed Coreslab or Centex to perform the assignment is disputed.[1] It is undisputed, however, that Coreslab finished its installation work on the roof and turned control of the area over to Centex and/or Tyson.[2] At some point after the turnover date, Donnie Wayne Johnson, Jr., an employee of Campbell, fell through one of these holes onto the concrete 30 feet below, suffering serious injuries.

After his injuries, Mr. Johnson filed suit against Tyson, Centex, and Coreslab.[3] Tyson and Centex both filed motions for summary judgment on the basis that they were acting in the capacity of a general contractor at the site, and were thus immune from liability under the workers' compensation statutes. Coreslab also filed a motion for summary judgment, arguing that it owed no duty to Mr. Johnson, was not the proximate cause of his injury, and/or any duties that were owed to Mr. Johnson had been delegated or transferred by Coreslab to other parties. The trial court granted both the Tyson and Centex motions for summary judgment. The trial court denied the motion of Coreslab, citing OSHA regulations which the court believed created a non-transferable duty. Coreslab filed a motion for an interlocutory appeal of the court's denial of its motion. Mr. Johnson filed a motion for an interlocutory appeal of the court's granting of the motion to dismiss Centex and Tyson. Both of these motions were granted by this court and the appeals were consolidated into the case now before the court.

---

[1]Tyson eventually directed Centex, via the change order process provided in their contract, to cover these holes.

[2]It is unclear to which company and on what date Coreslab relinquished control of the roof area. However, it is undisputed that Coreslab no longer had any control over the area in which the accident occurred.

[3]Mr. Johnson also filed suit against City Roofing Company and Casey Electric Company. These parties are not involved in this appeal.

The issues as we perceive them are as follows:

1.      Was the trial court correct in granting Centex's motion for summary judgment?

2.      Was the trial court correct in granting Tyson's motion for summary judgment?

3.      Was the trial court correct in its denial of Coreslab's motion for summary judgment?

With respect to the court's legal conclusions, our review is *de novo* with no presumption of correctness. *See, e.g., Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furn, and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999); Tenn. R. App. P. 13(d). A summary judgment is appropriate only if no genuine issues of material fact exist, and the defendant is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56. A court must consider the evidence in a light most favorable to the non-moving party and allow all reasonable inferences in its favor. *See Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993).

**Centex**

Tennessee Code Annotated section 50-6-108(a) states:

> The rights and remedies herein granted to an employee subject to the Workers' Compensation Law on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of such employee, such employee's personal representative, dependents or next of kin, at common law or otherwise, on account of such injury or death.

Tenn. Code Ann. § 50-6-108(a) (1999). Tennessee courts have determined that this statute precludes any action by an injured worker against his employer outside the bounds of the statute. *See McAlister v. Methodist Hosp. of Memphis*, 550 S.W.2d 240 (Tenn. 1977).

Section 50-6-113 of the Tennessee Code expands the liability of general contractors to require them to provide workers' compensation coverage to the employees of their subcontractors.

> (a) A principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal, intermediate contractor, or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.
>
> (b) Any principal, or intermediate contractor, or subcontractor who pays compensation under the foregoing provisions may recover the amount paid, from any person who, independently of this section, would have been liable to pay compensation to the injured employee, or from any intermediate contractor.
>
> (c) Every claim for compensation under this section shall be in the first instance presented to and instituted against the immediate employer, but such

proceedings shall not constitute a waiver of the employee's rights to recover compensation under this chapter from the principal or intermediate contractor; provided, that the collection of full compensation from one (1) employer shall bar recovery by the employee against any others, nor shall the employee collect from all a total compensation in excess of the amount for which any of the contractors is liable.

Tenn. Code Ann. § 50-6-113 (1999). Tennessee courts have found that this expansion of a general contractor's liability does provide the general contractor with a benefit. Our courts have ruled that the immunity provided under section 50-6-108(a) follows the requirement to provide workers' compensation coverage. Thus, general contractors are immune from any action involving on the job injuries brought outside of the workers' compensation statutes. *See Manning v. Rentenback Eng'g Co.*, 625 S.W.2d 718 (Tenn. Ct. App. 1981).

While Mr. Johnson does not dispute that Centex was the general contractor on the site, he argues that Centex assumed the responsibility to cover the hole through which he fell in a separate contract outside the scope of its original contract with Tyson, and, as such, was not acting in its capacity as general contractor. We disagree. A study of the original Tyson-Centex contract reveals that Article 13, entitled "Changes in the Work," states that "[t]he owner, without invalidating this agreement, may order changes in the work, additions, deletions or modifications." Indeed, Tyson submitted a written change order to Centex directing that company to cover the hole through which the plaintiff fell. It is obvious that the change order to cover these holes represented an agreement well within the Tyson-Centex contract. As Centex was the general contractor on-site, and its responsibility to cover the holes fell within its duties as general contractor under the Tyson-Centex contract, we find that Centex is immune from suit under the workers' compensation statutes. As such, we affirm the trial court's granting of summary judgment to Centex.

**Tyson**

In order to determine what liability, if any, Tyson has to Mr. Johnson, it is necessary to address whether Tyson was acting in the capacity of a general contractor during the construction of its poultry food products plant. If Tyson was acting as a general contractor on the project, then it will be immune from suit for the reasons already discussed. If Tyson was not a general contractor on the site, it had no immunity and the trial court incorrectly granted summary judgment in Tyson's favor. Thus, Tyson's relationship with Centex, and whether Tyson was acting as a general contractor at the site, is dispositive in this case.

The test for determining whether a party was acting as a general contractor is well established. In Tennessee, several factors are considered in determining whether a party qualifies as a general contractor. As stated by the supreme court, the factors include the "(1) right to control the conduct of work; (2) right of termination; (3) method of payment; (4) whether alleged employee furnishes his own helpers; (5) whether alleged employee furnishes his own tools; and (6) whether one is doing 'work for another'." *Stratton v. United Inter-Mountain Tel. Co.*, 695 S.W.2d 947, 950 (Tenn. 1985) (citing *Carver v. Sparta Elec. Sys.*, 690 S.W.2d 218 (Tenn. 1985) (further citations

omitted)). While no single factor is necessarily dispositive, the right to control the work is considered the most important factor.[4]  *See id.*

We find *Stratton v. United Inter-Mountain Tel. Co.*, 695 S.W.2d 947 (Tenn. 1985), to be instructive in this case.  In *Stratton*, United Inter-Mountain Telephone Company was sued by a worker employed by the company who was injured while working on a utility pole.  The supreme court in that case found that the company's ability to demand the removal of any employee with whom it was not satisfied, as well as the right to direct the order in which the contracted work was done, was conclusive proof of the company's right to control the work.  *See id.*  In this case, Tyson had those same rights under its contract with Centex.

Tyson had several additional rights and responsibilities under its contract.  Tyson required Centex to "perform no portion of the Work requiring submittal and review of shop drawings, product data, samples or other similar submittals until such submittals [had] been approved by the Project Manager," a Tyson employee.  Tyson required Centex to submit a schedule of work which Tyson's project manager could require to be revised according to Centex's work completion in relation to the entire construction project.  Tyson's project manager also had the right to visit the site and determine if the work was being done in a manner consistent with the contract.  Tyson required Centex and its subcontractors to follow Tyson's safety precautions and programs.

Tyson's project manager had the authority "to interpret and decide matters concerning performance of the work," as well as the ability to reject work which did not conform to Tyson's standards.  Tyson had the right to perform work related to the project with its own workers.  Tyson even had the right to terminate Centex's contract and "take possession of the site and of all materials and equipment to be incorporated in the work, tools, construction equipment and machinery thereon owned by the Contractor [Centex] and [to] finish the work by whatever means and methods" Tyson desired.  With such language, it is clear that Tyson had the *right* to control almost every aspect of the construction of the poultry processing plant.  As Tyson had such inclusive control over the project, it is clear to this court that Tyson was acting in the capacity of a general contractor.  Thus, for the reasons already discussed previously, Tyson is immune from suit through the immunity provided under the workers' compensation statutes.  The trial court was correct in its decision to grant Tyson summary judgment, and we hereby affirm that decision.

### Coreslab

In its order denying Coreslab's request for summary judgment, the trial court found OSHA regulations created a duty for Coreslab to protect "workers" and that this duty was non-delegable.  In Tennessee, a violation of such regulations constitutes negligence per se.  *See Bellamy v. Federal Express Corp.*, 749 S.W.2d 31, 34 (Tenn. 1988).  Using this rationale, the trial court denied

---

[4]The court has also emphasized that it is the *right* to control, not the amount of control actually exercised, that is important.  *See Stratton v. United Inter-Mountain Tel. Co.*, 695 S.W.2d 947, 950 (Tenn. 1985) (citing *Wooten Transp., Inc. v. Hunter*, 535 S.W.2d 858 (Tenn. 1976)).

Coreslab's motion for summary judgment. In order for this court to review that decision, it is necessary for us to examine the various duties set forth in the OSHA regulations as they relate to Coreslab.

Under OSHA regulations, an employer has two duties.

(a) Each employer--
(1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees;
(2) shall comply with occupational safety and health standards promulgated under this chapter.

29 U.S.C. § 654 (1999 & Supp. 2000).

The first duty is often referred to as the "general duty" of an employer, while the second is to referred to as the "specific duty." Each duty imposes different requirements on the employer. "The general duty clause requires every employer to use reasonable care to protect his own employees from recognized hazards likely to cause death or serious bodily injury, regardless of whether the employer controls the workplace, is responsible for the hazard, or has the best opportunity to abate the hazard." *Ellis v. Chase Communications, Inc.*, 63 F.3d 473, 477 (6th Cir. 1995) (citing *Teal v. E.I. DuPont de Nemours and Co.*, 728 F.2d 799, 804 (6th Cir. 1984)). The "general duty clause" has been interpreted as a general "catch-all" clause which Congress intended to operate as an expression of the reasonable care which every *employer owes his own employees*. *See id.* at 480. In other words, the general duty clause only charges Coreslab with a general duty to protect its own employees, not the employees of another. Since Mr. Johnson was not an employee of Coreslab, the company owed him no duty under the "general duty clause."

On the other hand, the "special duty clause" is intended "for the special benefit of all employees, including the employees of an independent contractor, who perform work at another employer's workplace." *Id.* However, "the class of employers who owe a duty under the specific duty clause is defined with reference to control of the workplace and opportunity to comply with OSHA regulations." *Id*. at 477. Thus, control of the workplace determines if an employer owes a special duty to everyone performing work at that location. It is undisputed that Coreslab had no control over the area in which Mr. Johnson was injured, having previously turned over control to Tyson or Centex after completing its work. As such, Coreslab no longer had any special duties to any workers who were present in that area.

Since Mr. Johnson was injured in an area outside of Coreslab's control, Coreslab owed him no duty under the special duty clause. Additionally, as already discussed, Coreslab owed Mr. Johnson no duty under the general duty clause. Thus, it is clear to this court that there are no OSHA regulations which impose any duty on Coreslab to protect Mr. Johnson. As such, the trial court erred

in its denial of Coreslab's motion for summary judgment. We hereby reverse the trial court's ruling denying Coreslab's motion for summary judgment.

We note that Mr. Johnson has raised several claims as to common law negligence. For a common law negligence action to avoid summary judgment, several factors must be determined, foremost of which is the finding of a duty between the injured and the defendant. We can find no such duty. Mr. Johnson notes that the trial court, in its order denying Coreslab's motion for summary judgment, found substantial evidence that the holes were negligently covered. However, Coreslab did not cover these holes, and, as such, any negligence in their covering has no bearing on this case. Mr. Johnson also cites a series of cases finding a duty to use due care to reduce the danger of injury if a dangerous condition exists. Upon our review, we note that each of these cases addresses the owner and/or occupier of the property. Coreslab, at the time the injury occurred, was neither and thus these cases have no bearing on our decision.

## Conclusion

Based on the foregoing conclusions, we hereby affirm the trial court in its granting of summary judgment to both Centex and Tyson. We reverse the trial court's denial of Coreslab's motion for summary judgment and hereby grant that motion. Costs on appeal are assessed against the appellant, Donnie Wayne Johnson, Jr., and his surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE