Michael PENNINGTON, Appellant,

v.

MEADWESTVACO CORPORATION,
Appellee.

No. 2006–CA–000916–MR.

Court of Appeals of Kentucky.

June 15, 2007.

Discretionary Review Denied by
Supreme Court Dec. 12, 2007.

Kenneth L. Sales, Joseph D. Satterley, Paul J. Kelley, Kevin D. Samples, Louisville, KY, for appellant.

Douglas W. Langdon, J. Kendrick Wells IV, Robert C. Ewald, Louisville, KY, for appellee.

Before COMBS, Chief Judge; KELLER, Judge; BUCKINGHAM,[1] Senior Judge.

*OPINION*

COMBS, Chief Judge.

Michael Pennington appeals from a summary judgment rendered by the Hardin

---

**1.** Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

Circuit Court in favor of MeadWestvaco Corporation. After our review of the record, we affirm.

On April 24, 2003, Michael Pennington was severely injured in a work-related accident. He was standing upon a mechanical scissor lift when it slipped into a wide hole that had been cut into concrete flooring during renovation of a manufacturing plant in Elizabethtown, Kentucky. Pennington was employed by Charles F. Mann Painting Co., Inc., (Mann Painting) at the time of the accident, and he received workers' compensation benefits from Mann Painting's insurance carrier. On March 8, 2004, Pennington filed a tort action in Hardin Circuit Court against the owner of the site, MeadWestvaco Corporation, and Jenkins–Essex Construction Co., Inc., (Jenkins–Essex), the renovation contractor.

In October 2005, MeadWestvaco moved for summary judgment on the grounds that it owed no legal duty to Pennington with regard to defects or dangers of which he was aware. MeadWestvaco contended that even if Pennington claimed that he was not aware of the obvious danger, Jenkins–Essex, the contractor, and Mann Painting, Pennington's employer, had notice of the condition of the floor. Thus, MeadWestvaco argued that such knowledge on the part of the contractor and the employer relieved it as the property owner of any duty to warn.

In response to the motion, Pennington contended that MeadWestvaco was liable because it had allegedly violated duties established by specific regulations promulgated pursuant to the provisions of the federal Occupational Safety and Health Act (OSHA) and the Kentucky Occupational Safety and Health Act (KOSHA). Pennington requested leave to amend his complaint to add a claim against MeadWestvaco for negligence *per se* based upon these alleged regulatory violations. The

trial court granted leave to amend. At the hearing on MeadWestvaco's motion for summary judgment, the court agreed to consider Pennington's new claims contemporaneously with the arguments in support of the motion for summary judgment. Following oral argument, the trial court granted MeadWestvaco's motion as to all the claims that Pennington had asserted against it. This appeal followed.

Pennington argues that the trial court improperly granted summary judgment in favor of MeadWestvaco for the following reasons: first, that the court erred in determining that MeadWestvaco did not owe a duty to him to insure that work at the site complied with specific KOSHA regulations; second, that the court misinterpreted Kentucky law so as to result in a violation of public policy; and alternatively, that the court erred by failing to require MeadWestvaco to prove the absence of its negligence. We shall address each of these arguments.

On April 16, 2003, about a week before the accident, Pennington was hired by Mann Painting to paint the interior of a physical plant that was being upfitted to meet the manufacturing requirements of MeadWestvaco. Mann Painting had been hired by Jenkins–Essex as a subcontractor to perform painting work as part of the renovation project.

The evidence revealed that a couple of weeks before Pennington's accident, Jenkins–Essex had cut wide openings into the facility's concrete floor in order to pour concrete footers for new manufacturing equipment that was to be installed. This portion of the facility had been cordoned off to prevent ready access.

Because various other subcontractors objected to paint fumes, Mann Painting's employees began working second-shift when no other contractors were present at

the facility. Robert Antkowiak, Mann Painting's on-site foreman, asked if his men could paint in the restricted area during this time. Mike Nall, Jenkins–Essex's superintendent, specifically warned Antkowiak to beware of the many wide holes that had been cut into the floor.

When Mann Painting employees entered the restricted area, they covered the floor with plastic sheeting to catch paint overspray, and they marked the floor openings beneath the sheeting with safety cones. Antkowiak then began acting as "groundman," helping the painters to avoid driving the mechanical lifts into the wide holes. The painters were instructed not to move from any location without Antkowiak's direct supervision.

Pennington, however, did not wait for Antkowiak's assistance before moving his lift to a new location for painting. Instead, at about 5:30 p.m., Pennington drove his lift just short of one of the holes and began to raise it some 20 feet toward the ceiling. Next, Pennington extended a platform to walk out nearer to the area to be painted. When Pennington walked out onto the platform, the lift became unbalanced and slipped forward into the hole. Pennington fell to the floor and then into another wide hole. He sustained injuries to his heel, ankle, elbow, shoulder, and back. He also suffered a broken leg.

Pennington admitted that he was aware of the wide holes in the area where Mann Painting employees were operating the lifts on the day he was injured. He was also trained in operating the lift and was aware of the risk that the lift might turn over if it were driven too near a hole.

The manufacturing plant where the accident occurred is owned by MeadWestvaco. MeadWestvaco engaged Jenkins–Essex to renovate the entire facility according to MeadWestvaco's plans and specifications. MeadWestvaco's contract with Jenkins–Essex gave Jenkins–Essex control over all construction methods and the coordination of work performed on the job site. The contract provided—in relevant part—as follows:

> The Contractor agrees to provide all engineering, design and other similar services, labor, materials, services, administration, tools, supplies, equipment . . . and all other services and items necessary for the property execution and completion of the [Work].
>
> * * * *
>
> The Contractor shall be solely responsible for and have control over all of the construction means, methods, techniques, sequences, processes and procedures and for coordinating all portions of the work under the Contract, unless the Contract gives other specific instructions concerning these matters.

The contract further provided that Jenkins–Essex was responsible for the safety of employees on the work site:

> [T]he Contractor shall take all necessary precautions for the safety of employees on the Work and shall comply with all applicable provisions of Federal, state, local and other safety, health, fire and building laws, codes, regulations, ordinances, rules, requirements, order and standards, and of industrial and insurance codes, rules, regulations, requirements, orders or standards to prevent accidents or injury to persons on, about or adjacent to the Property where the Work is being performed. It shall erect and properly maintain at all times, as required by the conditions and progress of the Work, all necessary safeguards for the protection of workers and the public and shall post danger signs warning against all hazards created by the Work, including, without limitation, toxic fumes or gases, protruding nails, hood

hoists, well holes, elevator hatchways, scaffolding, ditches, pits and other ground excavations, window opening, stairways and falling materials.

Jenkins–Essex hired Mann Painting as a subcontractor for the renovation project; Pennington then was hired by Mann Painting. Employees of MeadWestvaco did not instruct Mann Painting employees as to how to perform their individual duties. In fact, Pennington stated that he noticed only one MeadWestvaco representative at the renovation site during the time that he was working there.

MeadWestvaco did retain the right to insure that the contract was being carried out in accordance with the plans and specifications of the project; thus, it had access at all times to the facility. It also reserved the right to terminate the contract upon the contractor's default and to enter upon the property and take possession of the work in the event of a default. To facilitate these ends, MeadWestvaco's representative, Victor Vilece, was on site daily.

Pennington contends that the trial court erred by granting summary judgment in favor of MeadWestvaco. Summary judgment is appropriate where "there is no genuine issue as to any material fact, and ... the moving party is entitled to judgment as a matter of law." CR 56.03. We review a grant of summary judgment *de novo*.

Pennington argues that the court erred in determining that MeadWestvaco did not owe to him a duty to insure that work at the site complied with specific KOSHA regulations. We disagree.

Pennington based his negligence action on the alleged failure of MeadWestvaco to comply with certain administrative regulations promulgated pursuant to KOSHA,

specifically 803 KAR[2] 2:412 and 803 KAR 2:303. These regulations incorporate by reference federal occupational safety and health standards relating to construction workers. The regulations require employers to protect employees from floor openings and holes on other walkways by covering them, surrounding them by railings, or by having them constantly monitored by someone. Pennington contends that MeadWestvaco's standard of care is defined by these regulations—violation of which constitutes negligence *per se.*

The federal courts have addressed the issue of the extent to which property owners can be considered "employers" responsible for and chargeable with OSHA violations. In *Teal v. E.I. DuPont de Nemours & Co.,* 728 F.2d 799 (6th Cir.1984), the court considered whether a plant owner, who would normally be responsible for complying with OSHA regulations, was also obligated to protect an employee of an independent contractor working at the plant owner's facility. The independent contractor was hired by the plant owner to dismantle and to remove hydraulic bailers from the facility. During the course of the project, the contractor's employee fell from a ladder permanently affixed to the floor of the bailer pit. The ladder, installed and maintained by the plant owner, failed to conform with an OSHA regulation requiring a seven-inch clearance from the centerline of the rungs to the nearest permanent object in back of the ladder.

After examining OSHA's "special duty provision" (29 U.S.C.A.[3] § 654(a)(2), requiring employers to comply with occupational safety and health standards promulgated under the act), the court reasoned that Congress had enacted the measure for the benefit of *all* employ-

---

**2.** Kentucky Administrative Regulations.

**3.** United States Code Annotated.

ees, including the employees of an independent contractor, who perform work at another employer's workplace. It held that once an employer is deemed responsible for complying with OSHA regulations, it is obligated to protect every employee who works at its workplace.

The *Teal* Court's holding and reasoning were recently scrutinized by the Supreme Court of Kentucky in *Hargis v. Baize*, 168 S.W.3d 36 (Ky.2005). In *Hargis,* the Court considered whether KOSHA's protections extend to any employee, including an employee of an independent contractor, who is performing work at another employer's workplace. If so, the violation of a KOSHA regulation would trigger a private right of action in favor of the injured employee. *See* Kentucky Revised Statutes (KRS) 446.070.

The Supreme Court of Kentucky adopted the *Teal* reasoning *verbatim.* It held that Baize, the owner of a lumber yard and sawmill, could be held responsible for the death of Hargis, an independent contractor supplying the lumber yard with logs, if it could be shown that the lumber yard had violated a specific KOSHA regulation governing the binding and unloading of logs. It held that Hargis's estate was entitled to pursue a wrongful death claim against Baize for the violation of a KOSHA regulation even though Baize was not Hargis's employer.

Pennington argues that the court's holding in *Hargis* is the governing precedent and that the trial court erred by relying on the Sixth Circuit's more recent holding in *Ellis v. Chase Communications, Inc.*, 63 F.3d 473 (6th Cir.1995). In *Ellis,* an employee of an independent painting contractor fell to his death from a communications tower owned by Chase Communications after he unbuckled his safety harness in order to change positions. Ellis's adminis-

trator filed a tort action against Chase Communications, the owner of the premises. The federal district court granted summary judgment in favor of Chase Communications, and the Sixth Circuit affirmed.

Revisiting *Teal,* the Court clarified that its holding in *Teal* "merely extends to employees of an independent contractor the same duty owed to one's own employees." *Ellis,* 63 F.3d at 477–78. "A critical question in determining whether an OSHA violation is negligence *per se,* therefore, is whether the defendant is an employer subject to the OSHA regulation in question." *Ellis,* 63 F.3d at 477. The Court reasoned that because the responsible employer had control of the workplace in *Teal,* it had the opportunity and the duty to assure compliance with OSHA regulations directly pertinent to its own operation; *i.e.,* the ladder that the plant owner had installed for its own purposes. *Teal,* 728 F.2d at 804; *Hargis,* 168 S.W.3d 36.

Distinguishing the facts before it, the Sixth Circuit noted that the Chase Communications television tower was not a "regular job site on which Chase had a duty to protect its own employees." *Ellis,* 63 F.3d at 478. Consequently, Chase Communications was not considered an "employer" with respect to the tower site so as to render it subject to OSHA requirements. The particular safety violation at issue was not one for which Chase Communications would normally be responsible in the usual course of its operations. "Chase's status as an employer in other contexts does not change the fact that, in regard to the tower, Chase was no different than a property owner hiring a contractor to perform work on its property." *Id.* In essence, *Ellis* holds that an employer is liable to all employees—either its own or those of an independent contractor—only for violations of those standards

that it is required to obey and maintain in the regular course of its own business operations. If an independent contractor undertakes duties unrelated to the normal operations of an employer, the responsibility for violation of safety standards associated with those separate functions falls upon the independent contractor.

■ We agree that the trial court correctly relied on *Chase Communications*. The facts before us are not distinguishable in any meaningful way from the critical facts outlined by the court in *Chase Communications*. MeadWestvaco purchased the Elizabethtown plant with the intention of renovating the facility to accommodate its anticipated manufacturing needs. There was no evidence to suggest that as of the time of the accident, the facility was a regular job site for MeadWestvaco or that MeadWestvaco was an "employer" with respect either to the plant itself or to the renovation undertaken by Jenkins–Essex. It is true that MeadWestvaco had ultimate control of the premises by virtue of owning it. Nonetheless, we conclude that it did not retain sufficient control of the subcontractor's employees or the painting of the facility to be regarded as an employer responsible for violations of safety standards established by the provisions of KOSHA. The relationship between MeadWestvaco and Jenkins–Essex, as defined by their contract, conferred upon Jenkins–Essex (and not MeadWestvaco) both the opportunity and the responsibility to assure compliance with relevant safety regulations.

Additionally, we disagree with Pennington's contention that the trial court's interpretation and application of the law was erroneous as a violation of public policy. The legislature's intention to promote the safety, health, and welfare of all employees does not imply or require that the courts expand potential liability beyond the scope

defined by law. KOSHA standards clearly apply only to employers and employees. Under these facts, MeadWestvaco cannot be legitimately characterized as an employer. Therefore, it cannot be held liable for Pennington's injuries.

In the event that the court might not be persuaded that the relevant standard of care in this case is established by KOSHA regulations, Pennington contends in the alternative that the trial court erred by failing to apply the burden-shifting approach adopted by Kentucky in certain slip-and-fall cases. Pennington argues that this case is governed by the principles adopted by the Supreme Court of Kentucky in *Lanier v. Wal–Mart Stores, Inc.*, 99 S.W.3d 431 (Ky.2003). Under *Lanier*, Pennington contends that he enjoys a presumption that MeadWestvaco was negligent, thus, precluding the entry of summary judgment.

In *Lanier*, the plaintiff slipped on an unidentified clear liquid while shopping in a grocery aisle at a Wal–Mart store. Lanier could not prove that Wal–Mart was negligent because she could not prove how long the liquid had been on the floor. Nor could she prove that the store's employees either caused it to be there or had notice of its presence for a sufficient time to have removed or warned of the potential hazard. She lost in the trial court.

The Kentucky Supreme Court reversed, reasoning that this traditional approach to the burden of proof was inequitable in light of the difficulty (if not the impossibility) for plaintiffs in such cases to prove when a foreign substance came to be on the floor and whether the storeowner had actual or constructive notice of the dangerous condition. The court concluded as follows:

[A]s between two apparently innocent parties, one being a business proprietor having a duty to maintain his premises

in a reasonably safe condition for the use of his customers and the other being the invited customer, the burden of proof **with respect to the cause of the unsafe condition** of the premises should be on the one with the duty to prevent it.

*Lanier,* 99 S.W.3d at 434. (Emphasis added).

■ In contrast, the cause of the allegedly unsafe condition in this case is not at issue. Additionally, the length of time that the condition existed and whether Mead-Westvaco had notice of the condition are not issues raised either by Pennington or MeadWestvaco. The undisputed facts show that Pennington had at least constructive notice of the condition and that the condition was open and obvious. Pennington had been instructed to await Antkowiak's supervisory assistance prior to moving machinery within the restricted area. He failed to follow this directive and moved into the area on his own. The facts do not support the existence of any duty owed by MeadWestvaco under Kentucky law that would support Pennington's common law negligence claims. *Ralston Purina Co. v. Farley,* 759 S.W.2d 588 (Ky.1988).

We affirm the judgment of the Hardin Circuit Court.

ALL CONCUR.