RENDERED: SEPTEMBER 27, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky

2016-SC-000099-DG

DATE 10/18/18 Kim Redman, DC

AUSLANDER PROPERTIES, LLC           APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.          CASE NO. 2014-CA-000022
NELSON CIRCUIT COURT NO. 10-CI-00688

JOSEPH HERMAN NALLEY; MARY NALLEY;          APPELLEES
STEPHANIE NALLEY; JEWISH HOSPITAL;
ST. MARY'S HEALTHCARE INC., D/B/A
FRAZIER REHAB INSTITUTE; AND
UNIVERSITY MEDICAL CENTER, INC.,
D/B/A UNIVERSITY OF LOUISVILLE
HOSPITAL

## MEMORANDUM OPINION OF THE COURT

## REVERSING AND REMANDING

Appellant, Auslander Properties, LLC (the LLC), appeals from a Court of Appeals' decision affirming a judgment of the Nelson Circuit Court in favor of Appellee, Joseph Herman Nalley (Nalley).[1] Nalley was awarded compensatory damages for serious personal injuries he sustained while working on a roof at property owned by the LLC. Consistent with the rulings of the trial court, the Court of Appeals determined that the LLC was an "employer" and was, therefore, subject to certain employee safety regulations promulgated pursuant

---

[1] Stephanie Nalley; Mary Nalley; University Medical Center, Inc. D/B/A University of Louisville Hospital; Jewish Hospital; and St. Mary's Healthcare, Inc. D/B/A Frazier Rehab Institute are also appellees.

to KRS Chapter 338, the Kentucky Occupational Safety and Health Act (KOSHA), and the federal Occupational Safety and Health Act (OSHA); and that the LLC had violated duties owed to Nalley under KOSHA. Upon discretionary review, for reasons stated below, we reverse the Court of Appeals and remand the case to the Nelson Circuit Court for dismissal of Nalley's claim.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

At the time of Nalley's injury, the LLC owned three residential properties and a two-tenant commercial building in Bardstown, Kentucky, and one residential property in Louisville. Steve Auslander (Auslander), a retired dentist, and his wife were the sole members of the LLC and they had no employees. Auslander managed the business, performing the ordinary tasks of a landlord such as keeping the books, collecting rent, paying bills, communicating with tenants, and negotiating leases. He performed some basic maintenance and repair work on the LLC's properties, and he arranged for others to perform more demanding tasks.

When one of the LLC's Bardstown tenants complained that tree limbs overhanging the building were causing a problem, Auslander contacted Nalley. Nalley was an experienced handyman who had occasionally performed maintenance and repair work for the LLC. His experience included trimming trees for other property owners, and he had done so while working from a rooftop. He had also built porches and additions on homes, including building a garage and porch on his own home. Additionally, he had painted houses working from ladders. So, Auslander hired Nalley to remove the offending branches from three trees.

2

After viewing the job to be done, Nalley determined that the roof of the building provided the best approach to the branches he needed to cut. He brought his own ladder and his own tools. Nalley climbed to the roof with his saw. He tied a rope to the limb he intended to cut and dropped the end of the rope to the ground. As Nalley sawed the limb, Auslander assisted by pulling the rope to guide the limb's fall. No problem was encountered with the first tree. However, while working on the second tree, Nalley stepped from the roof's solid shingled surface onto a section of decorative wooden rafters that was not designed to support his weight. Consequently, he fell eleven feet onto a concrete surface and sustained severely disabling injuries, including fractures to his spine and traumatic brain injury.

Nalley filed suit alleging the LLC was negligent in breaching the common law duties owed by a landowner to invitees on the property. He also alleged that the LLC was negligent per se because it failed to comply with KOSHA regulations requiring employers to provide safety equipment for employees working at heights above 10 feet.[2] The trial court overruled the parties' competing motions for summary judgment on the negligence per se claim. The case was ultimately submitted to the jury on both theories of liability.

With respect to the common law negligence claim, the jury answered special interrogatory instructions determining that: 1) the cosmetic nature of the exposed decorative rafters was either obvious to, or was known by, Nalley; and 2) in the exercise of ordinary care, the LLC should not have anticipated

---

[2] Nalley asserted violations of KOSHA regulation 803 KAR 2:015 Section 3 and OSHA regulation 29 C.F.R. 1910.23.

that Nalley might rely upon the load-bearing capability of the decorative rafters and fall as a result thereof.

The jury also determined by special interrogatory instructions the largely uncontested material facts pertaining to Nalley's KOSHA claim. Specifically, the jury found that Nalley was working at a height of more than 10 feet when he fell; that the LLC had not provided safety equipment that would have prevented his fall; and that the lack of such equipment was a substantial factor in causing Nalley's injuries. Consistent with those findings, the trial court entered judgment for Nalley.

The Court of Appeals affirmed the trial court's conclusion that the LLC was an "employer" as defined by KOSHA, and was, therefore, subject to KOSHA regulations, and that Nalley was within the scope of persons protected by the KOSHA regulations applicable to the LLC. The Court of Appeals relied primarily upon *Hargis v. Baize*, 168 S.W.3d 36 (Ky. 2005), and *Pennington v. MeadWestvaco Corp.*, 238 S.W.3d 667 (Ky. App. 2007).

While the appeal was pending, this Court decided *McCarty v. Covol Fuels No. 2, LLC*, 476 S.W.3d 224 (Ky. 2015). In a footnote, the Court of Appeals factually distinguished *McCarty* from the instant case and noted that *McCarty* did not implicate KOSHA.

Nalley argued in the Court of Appeals that the LLC had not effectively preserved its argument against the applicability of the KOSHA regulations. Because that court decided and rejected the LLC's argument on the merits, it declined to address the preservation issue. On discretionary review, Nalley

4

reasserts his preservation argument. Since it is potentially dispositive, we address it first.

## II. THE LLC PROPERLY APPEALED THE DENIAL OF SUMMARY JUDGMENT SEEKING REVERSAL OF THE TRIAL COURT JUDGMENT.

Nalley raises a number of procedural grounds upon which he contends this Court should dismiss the LLC's appeal. He notes that the LLC fails to specify whether its appeal was taken from the trial court's order denying summary judgment or the trial court's failure to grant its motion for a directed verdict. With respect to the former, Nalley argues that the order denying the LLC's motion for summary judgment is not appealable. With respect to the latter, Nalley argues that because the LLC failed to follow up its directed verdict motion with a post-trial motion for judgment notwithstanding the verdict (JNOV), the only appellate relief available is a new trial.

We are persuaded by neither of those arguments. The LLC's notice of appeal following entry of judgment in the trial court plainly shows that it appealed from the final judgment and the trial court's orders denying the LLC's motions for summary judgment and directed verdict.

In support of its claim that the LLC is improperly attempting to appeal the denial of a summary judgment motion, Nalley cites a familiar line of cases following *Gumm v. Combs*, 302 S.W.2d 616 (Ky. 1957). "An order denying a motion for summary judgment is not *appealable*. Nor is such a denial *reviewable* on an appeal from a final order or judgment where the question considered is whether or not there exists a genuine issue of a material fact."

5

*Id.* at 616-617 (internal citations omitted). *Gumm* and its progeny further explain the exception to that general rule:

> [T]here is an exception to the general rule found in [*Gumm*] and subsequently approved in *Loy v. Whitney*[3] and *Beatty v. Root*[4]. The exception applies where: (1) the facts are not in dispute, (2) the only basis of the ruling is a matter of law, (3) there is a denial of the motion, and (4) there is an entry of a final judgment with an appeal therefrom. Then, and only then, is the motion for summary judgment properly reviewable on appeal under *Gumm*.

*Transportation Cabinet, Bureau of Highways v. Leneave*, 751 S.W.2d 36, 37 (Ky. App. 1988); *see also Abbott v. Chesley*, 413 S.W.3d 589, 602 (Ky. 2013).

The four elements comprising the exception are clearly met here. First, the facts material to Nalley's negligence per se claim are not in genuine dispute and, although they were submitted to the jury, the findings were never in doubt. Nalley was working more than 10 feet off the ground and he was not provided safety equipment to prevent his fall. Second, Nalley's status as an employee or an independent contractor was clearly a matter of law. The LLC's only basis for summary judgment was that the KOSHA regulations pertaining to employees working from heights did not apply because the LLC was not an "employer" and Nalley was an independent contractor. Third, the trial court denied the LLC's motion. And fourth, the LLC appealed from a final judgment.

A fair synthesis of the *Gumm* rule provides that when the material facts were not genuinely disputed and summary judgment was denied purely as a matter of law, an order denying summary judgment is properly reviewable on

---

[3] 339 S.W.2d 164 (Ky. 1960).

[4] 415 S.W.2d 384 (Ky. 1967).

6

an appeal from an adverse final judgment, the same as any other interlocutory ruling by the trial court on a question of law. 302 S.W.2d at 617. Thus, we conclude that the denial of the summary judgment motion was a proper basis for the LLC's appeal.

Nalley also contends that the LLC cannot seek appellate relief from the trial court's failure to grant its motion for a directed verdict because the LLC failed to state grounds for the motion with sufficient specificity to present the issue to the trial court. Upon review of the record, we are satisfied that the LLC's motion for directed verdict was plainly understood to be based, among other things, upon the same rationale as its motion for summary judgment. The trial court was fully apprised of the issue being raised.

Next, citing *Eades v. Stephens*[5] and *Flynn v. Songer*,[6] Nalley asserts that by failing to move for judgment notwithstanding the verdict (JNOV) under CR 50.02, the LLC waived its right to any appellate relief other than a retrial. We do not disagree with the principle for which those cases are cited but they are not applicable here. The limiting principle described in *Eades* and *Songer* does not constrain the appellate court to ordering a retrial when other procedural avenues properly before it authorize more complete relief, such as dismissal of the underlying claim.

Like its earlier motion for summary judgment, the LLC's motion for a directed verdict, with respect to the negligence per se claim, was not based upon disputed evidentiary issues to be resolved by the jury. It, too, was purely

---

[5] 302 S.W.2d 117, 120 (Ky. 1957).

[6] 399 S.W.2d 491, 493 (Ky. 1966).

7

based upon an argument of law pertaining to the applicability of KOSHA regulations with which the LLC admittedly did not comply. If the LLC was entitled to the dismissal of Nalley's negligence per se claim due to the inapplicability of the KOSHA regulations, it is not subsequently deprived of that remedy because it failed to move for JNOV. The LLC's summary judgment motion arguing for dismissal based upon a matter of law rather than the non-existence of disputed material facts properly preserved the right on appeal to demand dismissal of the negligence per se claim. A motion for judgment notwithstanding the verdict was not necessary for the preservation of a remedy otherwise available through another issue on appeal. *See Gumm,* 302 S.W.2d 616.

Nalley raises other procedural points as grounds for dismissing the LLC's appeal, including the LLC's failure to secure an express ruling of the trial court denying its directed verdict motion and presenting arguments for reversal on appeal not pressed at an earlier stage in the litigation. We need not address the intricacies of these procedural arguments. It is clear that the LLC preserved its right to appeal the trial court's application of KOSHA regulations and its judgment of liability based thereon.

### III. AUSLANDER PROPERTIES, LLC IS ENTITLED TO DISMISSAL OF THE NEGLIGENCE PER SE CLAIM.

KOSHA was enacted for the purpose of "preventing any detriment to the safety and health of all employees, both public and private, covered by this chapter, arising out of exposure to harmful conditions and practices at places of work." KRS 338.011. KRS 338.031(1)(a) imposes a duty on "each employer" to furnish "his employees with employment and a place of employment which

8

are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." Subsection (b) of that statute requires employers to "comply with occupational safety and health standards promulgated under this chapter." The same duties are imposed verbatim under OSHA, 29 U.S.C. Section 654(a). As defined by KRS 338.015(1), "employer" means "any entity for whom a person is employed."

The LLC asserts that the Court of Appeals' opinion must be reversed because, having no employees, Auslander Properties, LLC could not be an "employer" as defined by KRS 338.015(1). The LLC further asserts that even if it is an "employer" generally subject to KOSHA, it is subject only to the specific regulations applicable to its function as a landlord and property owner, which does not include the regulations cited by Nalley for the protection of independent contractors working on rooftops or other high places. All grounds for reversal cited by the LLC involve matters of law which we review de novo. *Penix v. Delong*, 473 S.W.3d 609, 612 (Ky. 2015).

Nalley acknowledged at trial that he was an independent contractor rather than an employee of the LLC, and the relevant facts in the record all confirm that point. He argues, as the trial court concluded, that the LLC was an employer for KOSHA purposes because Auslander was an "employee" personally performing the work needed to conduct the LLC's property rental business.

We do not accept Nalley's characterization of Auslander's status. Nothing in the record suggests that Auslander was an employee of his own LLC. The employer-employee relationship is a familiar and well-established

9

species of agency relationship. It carries with it a wide range of specific legal obligations applicable in circumstances far beyond the KOSHA regulations now before us. We decline to stretch the traditional conception of that relationship so that Auslander may be deemed an employee of the LLC. A member of an LLC conducting business and performing work as an agent of the LLC does not automatically become an employee of the LLC.[7]

This determination alone does not resolve the issue before the Court. We allow that circumstances could arise in which an LLC with no employees is, nevertheless, bound to comply with certain KOSHA regulations inherently applicable to the core function of the LLC's business. We make no attempt to define those circumstances, but we remain open to the possibility that they exist.

Correspondingly, Nalley's status as an independent contractor rather than an employee of the LLC does not automatically defeat his claim. We recognized in *Hargis v. Baize* that an employer subject to KOSHA regulations for the protection of its own employees is also bound to comply with the same regulations for the benefit of an independent contractor performing on the employer's premises the same work as the employer's employees. 168 S.W.3d at 43. Consequently, in *Hargis*, a lumber mill operator was negligent per se for failing to provide KOSHA protections to an independent contractor performing the same job of hauling and unloading logs as its own employees. *Hargis* rests largely upon the rationale expressed by the Sixth Circuit Court of Appeals in

---

[7] *See* KRS 275.135(1). We also note that a member of an LLC may elect whether to be classified as an employee for workers' compensation purposes but need not do so. KRS 342.012(1).

10

*Teal v. E.I. DuPont de Nemours & Co.*, 728 F.2d 799 (6th Cir. 1984), holding that the OSHA (or KOSHA) regulations applicable to an employer's own employees are equally applicable to employees of independent contractors working on the premises doing the same kind of work. *Hargis* added that protections owed to employees of an independent contractor under *Teal* are also owed to the independent contractor himself.

In *Teal*, an employee of an independent contractor fell from a ladder at a DuPont plant. The ladder was affixed to the structure for use by DuPont employees. The *Teal* court held that the injured worker was within the class of workers that the OSHA ladder regulations were intended to protect, and that DuPont was already subject to those regulations for its employees using ladders at that workplace. *Id* at 805.

Together, *Teal* and *Hargis* make it clear that an employer's KOSHA responsibility can extend beyond its own employees to include others, such as independent contractors and their employees. The *Teal/Hargis* extension, however, is governed by a limiting rule explained in *Ellis v. Chase Communications, Inc.*, 63 F.3d 473 (6th Cir. 1995), and further addressed by this Court in *McCarty v. Covol Fuels No. 2, LLC.*

In *Ellis*, an independent contractor's employee fell to his death while painting a television tower owned by Chase Communications. Unlike the worker in *Teal*, who was entitled to the same workplace protections that DuPont already owed to its employees on that site, there was no evidence in *Ellis* that climbing the television tower for any purpose was a function ever performed by any employees of Chase Communications. 63 F.3d at 478.

11

The Court of Appeals addressed a similar issue in *Pennington v. MeadWestvaco Corp.*: whether the owner of a manufacturing plant was responsible for complying with specific KOSHA regulations applicable to the work of a subcontractor's employee performing renovation work at the plant. The *Pennington* court applied the analysis of *Ellis v. Chase Communications*, noting that Chase Communications "was not considered an 'employer' with respect to the tower site so as to render it subject to OSHA requirements. The particular safety violation at issue was not one for which Chase Communications would normally be responsible in the usual course of its operations." 238 S.W.3d at 671.

In *McCarty*, an employee of a commercial garage door contractor was killed while installing a heavy garage door at a building under construction at the site of a coal mine. The worker's estate brought a wrongful death action claiming that the mine operator was negligent per se because it permitted the garage door installation to proceed despite a lack of compliance with regulations generally applicable to large garage door installations and regulations pertaining to coal mine safety.

We explained in *McCarty* that it was unreasonable to expect a coal mine operator to inspect the safety habits of independent contractors installing a garage door and be otherwise knowledgeable about "the special techniques, requirements, and hazards of the various construction trades" such as commercial garage door installations. 476 S.W.3d at 232-233. Indeed, we noted that an employer's unfamiliarity with the hazards and regulations of

12

work activities beyond its core function was "a major reason for using specialized outside contractors instead of in-house laborers." *Id.* at 232.

We agree that when an employer sends its own employees into harm's way to perform *any* task regardless of the nature of the business, the employer must apprise itself of, and comply with, any safety regulation applicable to that task. The law requires such compliance. But when the employer engages the services of an independent contractor for a task alien to the core function of the employer's business, the employer is relying upon the special expertise and ability of the contractor to know and obey the applicable safety standards of that activity.

In *Hargis*, the independent contractor was injured at the employer's workplace, performing work that was an ordinary part of the employer's sawmill operation and was regularly performed by the employer's own workers. In contrast, the injured workers in *Ellis* and *McCarty*, respectively, were engaged in work not ordinarily associated with Chase Communications' television communications services or Covol Fuels' coal mining operation. Like the workers in *Ellis* and *McCarty*, Nalley was an independent contractor performing a specialized service not typically associated with the routine functions of the LLC's property rental business.

The Court of Appeals accepted Nalley's argument that cutting away high branches from the tops of trees was an ordinary component of the LLC's business as an owner and manager of rental property. We disagree. Certainly, some basic aspects of routine landscape maintenance fall within the core functions of managing and renting real estate, but specialized work like

13

climbing rooftops and ladders, or climbing into the tree itself, to cut branches requires specialized knowledge and skills beyond what is reasonably expected of an ordinary property rental business.

An employer who uses a specialized independent contractor rather than his own employees to perform those activities properly relies upon the contractor's skill and superior knowledge of the risks inherent in the work and the safety equipment and techniques required by applicable regulations for minimizing those risks. The LLC was not in the tree trimming business and it was not an employer of tree trimmers, rooftop workers, or workers using ladders for whom it must comply with KOSHA's standards designed to prevent falls from ladders and rooftops. As succinctly stated in *Pennington v. MeadWestvaco Corp.*: "If an independent contractor undertakes duties unrelated to the normal operations of an employer, the responsibility for violation of safety standards associated with those separate functions falls upon the independent contractor." 238 S.W.3d at 672 (citing *Ellis*, 63 F.3d 473).

The Court of Appeals distinguished *Pennington* based upon what it perceived as Auslander's control and supervision of the work being done by Nalley. Its characterization of Auslander's involvement in Nalley's work is not supported by the record. Auslander assisted Nalley by providing an extra set of hands to handle the detached branches, but Nalley decided how, when, and where he would cut the branches and where he would stand while doing so. Auslander did not control the manner and method of Nalley's work.

14

At the time of his injury, Nalley was an independent contractor rather than an employee of the LLC, and he was performing specialized work unrelated to the normal operations of the LLC's property rental business. The responsibility for complying with safety laws applicable to that specialized work was upon Nalley. Since the LLC had no duty of compliance, Nalley's negligence per se claim fails as a matter of law.

Finally, the LLC argues that the trial verdict should be reversed because of the improper admission of testimony by Nalley's expert witness. Based upon our disposition of the other issues, we need not address the merits of this argument.

## IV. NALLEY WAS NOT ENTITLED TO A DIRECTED VERDICT ON HIS COMMON LAW NEGLIGENCE CLAIM.

Nalley also argues that the trial court judgment should be affirmed based upon his alternative common law negligence claim. Specifically, Nalley contends that he was entitled to a directed verdict on that claim because "undisputed testimony reveal[ed] that the condition of the roof presented an unreasonable risk of harm" and that "Auslander knew about the danger and admitted he did not at least warn of it, and [Nalley] fell as a result."

A motion for a directed verdict should be granted only if "there is a complete absence of proof on a material issue or if no disputed issue of fact exists upon which reasonable minds could differ." *Bierman v. Klapheke*, 967 S.W.2d 16, 18–19 (Ky. 1998). In determining whether the trial court erred in failing to grant a motion for a directed verdict, the reviewing court "must consider the evidence in its strongest light in favor of the party against whom the motion was made and must give him the advantage of every fair and

15

reasonable intendment that the evidence can justify." *Lovins v. Napier*, 814 S.W.2d 921, 922 (Ky. 1991). "The decision of the trial court will stand unless it is determined that 'the verdict rendered is palpably or fragrantly against the evidence so as to indicate that it was reached as a result of passion or prejudice.'" *Indiana Insurance Company v. Demetre*, 527 S.W.3d 12, 25 (Ky. 2017) (quoting *Lewis v. Bledsoe Surface Mining Co.*, 798 S.W.2d 459, 461 (Ky. 1990)). In addition, "the considerations governing a proper decision on a motion for judgment notwithstanding the verdict are exactly the same as those . . . on a motion for a directed verdict." *Cassinelli v. Begley*, 433 S.W.2d 651-52 (Ky. 1968).

With those standards in mind, we reject Nalley's characterization of the evidence and conclude that the trial court did not err in denying Nalley's motion for a directed verdict. In the context of a premises liability claim, a landowner is not liable to an independent contractor for injuries sustained from defects or dangers that the independent contractor knows or ought to know of. *Owens v. Clary*, 75 S.W.2d 536, 537 (Ky. 1934).[8] Only when "the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to know," is the landowner liable for the contractor's injuries absent a warning. *Id.* at 537.

Contrary to Nalley's claim, the evidence presented at trial does not conclusively establish that the roof presented any hidden danger or an unreasonable risk of harm. Instead, the jury heard Auslander testify that,

---

[8] In *Brewster v. Colgate-Palmolive Co.*, this Court reaffirmed the rule stated in *Owens* concerning the duty owed by landowners to independent contractors. 279 S.W.3d 142, 143 n.1, 144 (Ky. 2009).

although the portion of the roof at issue was not designed to be weight-bearing, he did not think he "would ever mistake that for a roof." In addition, when asked whether she believed the roof was dangerous or misleading, the LLC's expert engineer explained that "It's an arbor. It's this open area at the roof. No, I don't think that it's misleading at all. It's these two by six boards on their ends, two foot apart . . . ." She further testified that "anyone with any type of construction knowledge would hesitate to—to step on it just because it's these little one and a half inch boards up in the air out there."

This testimony cannot reasonably be construed as "undisputed testimony" that the portion of the roof at issue "presented an unreasonable risk of harm," or that Auslander knew about any hidden danger that the roof allegedly posed. Rather, at a minimum, this testimony would allow reasonable minds to differ as to whether the roof constituted a defect or hidden danger or whether Nalley ought to have known of the alleged hidden danger. Because this testimony places issues of material fact in dispute, Nalley's motion for a directed verdict was properly denied.

Similarly, this testimony provided a sufficient basis for the jury's findings that "the cosmetic (i.e. not weight-bearing) nature of the exposed roof rafters" was either known or obvious to Nalley; Auslander should not have anticipated that Nalley might rely on the load-bearing capabilities of the cosmetic rafters and fall from the roof; the work area upon which Nalley stood was in a reasonably safe condition; and Steve Auslander did not fail to exercise ordinary care for the safety of Nalley.

17

In sum, the LLC presented sufficient evidence at trial to create disputed issues of material fact upon which reasonable minds could differ. Likewise, the jury's special verdict findings were fully supported by that evidence. Accordingly, the trial court did not err in denying a directed verdict on Nalley's common law negligence claim.

## V. THE TRIAL COURT'S INSTRUCTIONS ON NALLEY'S COMMON LAW NEGLIGENCE THEORY WERE CORRECT.

Nalley also argues that even if this Court concludes that a directed verdict was not appropriate, a new trial is nonetheless warranted because the trial court's jury instructions on the common law negligence claim were flawed. Nalley claims that the trial court's instructions misstated the law applicable to premises-liability claims between a landowner and invitee and that he is entitled to bare bones instructions instead.

Specifically, Nalley takes issue with instruction number 5. That instruction, in part, provided:

*Instruction No. 5*
*(Negligence)*

State whether you are satisfied from the evidence as follows:

A. Because of the nature of the activity and the potential for distraction, in the exercise of ordinary care Auslander Properties, LLC should have anticipated that Herman Nalley might fall from the roof during the course of his work.

B. Because of the nature of the work being performed and the potential for distraction, the work area upon which Herman Nalley stood was not in a reasonably safe condition for use by him.

Nalley argues that "the jury found that the LLC had breached its duty because it answered in the affirmative [to instruction 5A] that the nature of [Nalley's] work on the roof created the 'potential for distraction' and 'Auslander

18

Properties, LLC should have anticipated that Herman Nalley might fall from the roof during the course of his work." Thus, Nalley contends, the additional inquiry in 5B—asking whether the work area in question was in a reasonably safe condition—was unnecessary and only served to confuse the jury. Essentially, Nalley argues that the inquiry should have stopped after 5A, because the jury's affirmative answer to that instruction would necessarily mean a breach of duty had occurred.

"Whether a jury instruction misrepresents the applicable law is purely a question of law, which [this Court] review[s] de novo." *Maupin v. Tankersley*, 540 S.W.3d 357, 360 (Ky. 2018) (citing *Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015)). While Kentucky law encourages the use of bare-bones instructions, they are not required.[9] Rather, "the question herein is whether the instructions misstated the law by failing to sufficiently advise the jury 'what it [had to] believe from the evidence in order to return a verdict in favor of the party who [had] the burden of proof." *Office, Inc. v. Wilkey*, 173 S.W.3d 228, 229 (Ky. 2005) (quoting *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 824 (Ky. 1992) (alterations in original)). It is within the trial court's discretion to deny a requested instruction, and its decision will not be reversed absent an abuse of discretion." *Id.* (citing *King v. Ford Motor Co.*, 209 F.3d 886, 897 (6th Cir. 2000)).

---

[9] *See CSX Transp., Inc. v. Moody*, 313 S.W.3d 72, 82 (Ky. 2010) (citing *Lumpkins v. City of Louisville*, 157 S.W.3d 601 (Ky.2005); *Young v. J.B. Hunt Transportation, Inc.*, 781 S.W.2d 503, 506 (Ky.1989); *Drury v. Spalding* 812 S.W.2d 713, 718 (Ky. 1991)) (explaining that "Kentucky state courts take a 'bare bones' approach to jury instructions, . . . leaving it to counsel to assure in closing arguments that the jury understands what the instructions do and do not mean," but, "regardless of what form jury instructions take, they must state the applicable law correctly and neither confuse nor mislead the jurors.").

We think Nalley's argument misstates the law applicable to premises liability claims between landowners and invitees and that the trial court's instructions were sufficient. Nalley relies on a long line of cases in which this Court discusses the difference between duty and breach as it relates to foreseeability. The most applicable of these cases, and the one on which Nalley most heavily relies, is *Shelton v. Kentucky Easter Seals Soc,. Inc.* 413 S.W.3d 901 (2013).[10]

In *Shelton*, this Court held that, contrary to the traditional approach, the open-and-obvious nature of a hazardous condition does not eliminate a landowner's general duty of ordinary care. *Id.* at 911–12. "Rather, in the event that the defendant is shielded from liability, it is because the defendant fulfilled its duty of care and nothing further is required." *Id.* at 911. It follows, we explained, that "[t]he obviousness of a condition is a 'circumstance' to be factored under the standard of care." *Id.*

Thus, despite the obvious nature of a hazardous condition, a landowner may still be liable to an invitee in certain circumstances. Notably, liability may result where the landowner "ha[d] reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious or will forget what he has discovered . . . ." *Id.* at 907.

Nalley points to this language to support his argument that the jury, by answering in the affirmative to instruction 5A, necessarily found that

---

[10] Nalley also cites, as a part of this line of cases, *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288 (Ky. 2015); *Dick's Sporting Goods*, Inc. v Webb, 413 S.W.3d at 891 (Ky. 2013); and *Kentucky River Med. Ctr. v. McIntosh*, 319 S.W.3d 385 (2010). We similarly find the trial court's instructions to be consistent with those opinions.

Auslander breached the standard of care and that a second instruction asking whether the work area was in a reasonably safe condition for use was unnecessary and confusing to the jury.

*Shelton*, however, did not dictate that liability will *automatically* result simply because it is foreseeable that the invitee may be harmed because a distraction would cause him to forget about the danger. Rather, the court specifically noted that "when a defendant 'should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger'"—when, for example, the invitee is likely to not discover or forget about the dangerous condition because of a distraction—"liability may be imposed on the defendant as a breach of the requisite duty to the invitee depending on the circumstances." *Id.* at 915 (quoting *Kentucky River Med. Ctr. v. McIntosh*, 319 S.W.3d 389 (2010)). That is, liability may still be imposed in this situation "*if reasonable care is not exercised.*" *Id.*

Therefore, although the jury answered in the affirmative to instruction 5A, the jury could still conclude, based on the circumstances, that Auslander did not breach its duty owed to Nalley. Put another way, the liability inquiry could not simply end with instruction 5A; the instruction in 5B was needed.

In sum, we conclude that the jury instructions did not misstate Kentucky law, and the trial court did not abuse its discretion in failing to grant Nalley's request to substitute his own proposed jury instructions. Therefore, the trial court did not err in using its own jury instructions.

21

## IV. CONCLUSION.

For the reasons set forth above, we reverse the opinion of the Court of Appeals and remand this case to the Nelson Circuit Court for entry of a final judgment dismissing Nalley's claim.

All sitting. All concur.

COUNSEL FOR APPELLANT:

John Douglas Hubbard
Fulton, Hubbard & Hubbard

James Wendell Taylor
Taylor Law Group, PLLC

John Choate Roach
Ransdell, Roach & Royce, PLLC

Ryan Richard Loghry
Loghry Law, PLLC

COUNSEL FOR APPELLEES JOSEPH HERMAN NALLEY; MARY NALLEY; AND STEPHANIE NALLEY:

Kevin Crosby Burke
Jamie Kristin Neal
Burke, Neal, PLLC

Michelle Buckley Sparks
Keith Allen Sparks
McCoy & Sparks, PLLC

COUNSEL FOR APPELLEES JEWISH HOSPITAL AND
ST. MARY'S HEALTHCARE INC., D/B/A FRAZIER REHAB INSTITUTE:

Brian Scott Katz
Law Office of Brian S. Katz

COUNSEL FOR APPELLEE UNIVERSITY MEDICAL CENTER, INC., D/B/A
UNIVERSITY OF LOUISVILLE HOSPITAL:

John Byron Moore
10619 Meeting St.
Ste. 6312
Prospect, KY 40059

# Supreme Court of Kentucky

2016-SC-000099-DG

AUSLANDER PROPERTIES, LLC                                APPELLANT


                    ON REVIEW FROM COURT OF APPEALS
V.                        CASE NO. 2014-CA-000022
                    NELSON CIRCUIT COURT NO. 10-CI-00688


JOSEPH HERMAN NALLEY; MARY NALLEY;              APPELLEES
STEPHANIE NALLEY; JEWISH HOSPITAL;
ST. MARY'S HEALTHCARE INC., D/B/A
FRAZIER REHAB INSTITUTE; AND
UNIVERSITY MEDICAL CENTER, INC.,
D/B/A UNIVERSITY OF LOUISVILLE
HOSPITAL


## ORDER GRANTING PETITION FOR REHEARING AND WITHDRAWING AND REISSUING OPINION


The Court, being fully and sufficiently advised, ORDERS that:

1. Appellant's Petition for Rehearing is GRANTED; and,

2. The Opinion of the Court rendered herein on June 14, 2018, is

   hereby withdrawn, and the attached Opinion is reissued in lieu

   thereof.

3. The Opinion of the Court rendered herein on June 14, 2018,

   incorrectly identifies Appellees Jewish Hospital, St. Mary's

   Healthcare, Inc. d/b/a Frazier Rehab Institute, and University

   Medical Center, d/b/a University of Louisville Hospital as sharing

counsel in common with the Nalleys. The new Opinion corrects the alignment of counsel.

All sitting. All concur.

ENTERED: September 27, 2018

CHIEF JUSTICE