RENDERED: MAY 26, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1162-MR

TAMMY BROCK, INDIVIDUALLY
AND ALEXUS BROCK BY HER
MOTHER AND NEXT OF FRIEND,
TAMMY BROCK                                                      APPELLANTS


APPEAL FROM CLARK CIRCUIT COURT
v.          HONORABLE BRANDY OLIVER BROWN, JUDGE
ACTION NO. 18-CI-00287


ASHLEY BROCK; JAMIE BROCK;
JOHN DOE; AND LANDSCAPE
SERVICES INC.                                                     APPELLEES


AND


NO. 2021-CA-1190-MR


JAMIE BROCK, AS CO-
ADMINISTRATOR OF THE ESTATE
OF ORA LEE BROCK AND ASHLEY
BROCK, AS CO-ADMINISTRATOR
OF THE ESTATE OF ORA LEE
BROCK                                                            APPELLANTS

v.          HONORABLE BRANDY OLIVER BROWN, JUDGE
          ACTION NO. 18-CI-00287


LANDSCAPE SERVICES, INC.                    APPELLEE



OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, JONES, AND McNEILL, JUDGES.

McNEILL, JUDGE:  The Brocks[1] appeal from a summary judgment of the Clark

Circuit Court dismissing their claims against Landscape Services, Inc. ("LSI").

Finding no error, we affirm.

In a tragic accident, Ora Lee Brock was struck and killed by a

motorist while inspecting a trailer on the side of the interstate.  Mr. Brock had been

hired by Robert Jackson ("Jackson"), who owns and operates a landscaping

business, to assist him with several landscaping jobs he had contracted with LSI to

perform.  Following the accident, Mr. Brock's family sued Jackson and LSI in

---

[1] Tammy Brock, individually; Alexus Brock, by her mother and next of friend, Tammy Brock; Jamie Brock, as co-administrator of the estate of Ora Lee Brock; and Ashley Brock, as co-administrator of the estate of Ora Lee Brock (collectively, "the Brocks").

Clark Circuit Court,[2] alleging Jackson was negligent and LSI vicariously liable. After discovery, LSI moved for summary judgment arguing Jackson was not its employee but an independent contractor, therefore it could not be liable for his actions. It further argued that even if Jackson was its employee, it was still not liable based upon the "going and coming" rule. Finally, it alleged there was no evidence of any direct negligence on its part. The trial court granted the motion and dismissed the Brocks' claims. This appeal followed. Further facts will be set forth as necessary below.

Summary judgment is proper when the trial court determines that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Serv. Ctr.*, 807 S.W.2d 476, 480 (Ky. 1991); CR[3] 56.03. The Brocks present the following questions on appeal: (1) whether Jackson was an employee or independent contractor? (2) whether the "going or coming" rule applies if Jackson was an employee? and (3) whether the Brocks' claim for negligent hiring, training, supervision, control, and retention fails if Jackson was an independent contractor? "When the facts are substantially

---

[2] On June 19, 2018, Jamie Brock and Ashley Brock, as Co-Administrators of Ora Lee Brock's estate, filed No. 18-CI-00287 in Clark Circuit Court and an amended complaint on July 25, 2018. Then on January 16, 2019, Tammy Brock, individually, and on behalf of Alexus Brock, as her mother and next friend, filed No. 19-CI-00037 in Clark Circuit Court. These two actions were consolidated by agreed order on June 20, 2019.

[3] Kentucky Rules of Civil Procedure.

undisputed, as they are in this case,[4] whether a worker is an independent contractor is a question of law." *Dexter v. Hanks*, 577 S.W.3d 789, 796 (Ky. App. 2019) (citing *Uninsured Employers' Fund v. Garland*, 805 S.W.2d 116, 117 (Ky. 1991)).

As an initial matter, we must first address the deficiency of the Brocks' appellate briefs.[5] Their argument sections fail to make "reference to the record showing whether the issue was properly preserved for review and, if so, in what manner" as required by RAP[6] 32(A)(4). We require a statement of preservation:

> so that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration. It also has a bearing on whether we employ the recognized standard of review, or in the case of an unpreserved error, whether palpable error review is being requested and may be granted.

*Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

---

[4] Tammy Brock, in her appellate brief, states the facts are undisputed. Similarly, Jamie and Ashley Brock's appellate brief presents a list of undisputed facts about Jackson and LSI's employment relationship. Having reviewed the record, we agree that there are no genuine issues of material fact relevant to the question of whether Jackson was an independent contractor or employee of LSI. Although Tammy Brock claims otherwise in her reply, we will hold the Brocks to their original position.

[5] Tammy Brock's appellate brief failed to include any statement of preservation. While Jamie and Ashley Brock's brief included a statement of preservation, it was located at the beginning of the statement of the case rather than the argument section as required by Kentucky Rules of Appellate Procedure ("RAP") 32(A)(4).

[6] Kentucky Rules of Appellate Procedure.

"Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, [RAP 31(H)(1)]; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citing *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)). Because we have been able to determine their arguments were properly preserved, we will ignore the deficiency and proceed with the review.

Whether LSI can be vicariously liable for any negligence of Jackson depends on whether Jackson was an employee of LSI or independent contractor. "A principal may be held vicariously liable for the negligent acts of his or her agent, but generally is not held liable for the conduct of an independent contractor." *Nazar v. Branham*, 291 S.W.3d 599, 606 (Ky. 2009), *as modified on denial of reh'g* (Aug. 27, 2009) (citation omitted). "An individual is the agent of another if the principal has the power or responsibility to control the method, manner, and details of the agent's work." *Id.* at 606-07 (Ky. 2009). "If, however, an individual is free to determine how work is done and the principal cares only about the end result, then that individual is an independent contractor." *Id*. at 607.

While the Brocks cite nine factors from the RESTATEMENT (SECOND) OF AGENCY Section 220 (1958) to argue that Jackson was an employee and not an independent contractor, when the RESTATEMENT (THIRD) OF AGENCY was

-5-

published, Section 7.07 replaced Section 220, and omitted the nine factors, focusing on control as the critical factor in determining *respondeat superior* liability. Our Supreme Court has cited the RESTATEMENT (THIRD) OF AGENCY Section 7.07 with approval in *Papa John's Intern., Inc. v. McCoy*, 244 S.W.3d 44, 51-52 (Ky. 2008). Therefore, to determine whether Jackson was an employee or independent contractor, we look to the degree of control LSI exercised over Jackson's work.

The agreement itself is titled "Subcontractor Agreement" and lists Bob Jackson/Just Mowin as the name of the subcontractor. The agreement provides that LSI "desires to engage the services of Subcontractor to perform the services . . . for the Company's customers." It further states that "Subcontractor acknowledges and agrees that the relationship between the parties arising from this Agreement is that of an Independent Contractor. Subcontractor is not an agent or employee of the Company . . . ." Relevant to control, the agreement contains a dress code provision requiring subcontractor to wear shirts and forbidding tank tops or camouflage and another provision requiring subcontractor to behave in a professional manner.

Sample work orders in the record list the services Jackson was required to perform such as "[m]ow all turf areas," "[a]ll hedges and low shrubs are to be kept . . . with a maximum height of 36" within 50' of entrance," and "[a]ll

trees accessible from the ground without assistance of a man lift are to be 'lolli-popped' . . . ." The work orders also set forth how often Jackson was required to service a property, for example every seven days or every ten days. However, Jackson testified that he determined what days he worked within those parameters.

According to Jackson, he was the sole proprietor of his landscaping business, Just Mowin, and considered himself an independent contractor. He used his own truck, trailer, and equipment on the LSI jobs, set his own weekly schedule, and hired his own employees. LSI did not supervise his work on site or provide training.

Doug Stacy, President of LSI, testified that Jackson was a subcontractor, not an employee of LSI. Jackson did not utilize company transportation, equipment or receive company training. The scope of Jackson's work, and the details of such, such as hedge height and type of mulch to be used, are determined by the customer, not LSI. LSI communicates to Jackson the specifics of their service agreement with the customer and Jackson performs the work according to the agreement. As to the dress code, LSI wants to maintain a certain level of professionalism, so they require contractors to agree to that because they are associated with the company. Because of distance, the only supervision of Jackson's work is through occasional spot checking and complaints from customers, if any.

Based upon the evidence, Jackson was an independent contractor, not an employee of LSI. The only real control LSI exercised over Jackson was in setting a dress code. LSI did not actively monitor Jackson's work, did not provide equipment or transportation, and did not require that he receive company training. It did not control the method or manner of Jackson's work, and Jackson was free to set his own schedule. LSI did not care how or when Jackson performed the work, only that it conformed to the customer's desires. *See Nazar*, 291 S.W.3d at 607 ("If . . . an individual is free to determine how work is done and the principal cares only about the end result, then that individual is an independent contractor."). Therefore, LSI cannot be liable for Jackson's alleged negligence as a matter of law.

The Brocks argue the following facts show that LSI exercised extensive control over Jackson's work: (1) Jackson was required to mow every seven days; (2) Jackson had to trim shrubs to below 36" within 50' of an entrance; (3) Jackson was required to conform to a dress code; (4) Jackson had to perform spring and fall cleanup with detailed instructions; (5) Jackson was required to use specific materials in his work – dark brown mulch; (6) Jackson had to submit paperwork verified by the customer to show completion of work; (7) Jackson was required to submit photos showing completion of work.

However, almost all these requirements were expectations established by the customer, not LSI. For instance, Stacy testified that mulch type was based

upon customer desire. Similarly, other job specifics, such as mowing every seven days and trimming shrubs below 36," although not exactly clear from the record, appear to be standards established by LSI's contract with the customer. In the record are two "scope of work" documents setting forth the frequency and type of work to be performed for one of LSI's customers, GPM. According to Stacy, type and frequency of service was determined by the customer and communicated to the contractor. The spring and fall cleanup requirements also appear to have been set by contract with the customer, as they contain many of the same specifics as the scope of work documents.

Additionally, Stacy testified that subcontractors, like Jackson, were not required to submit paperwork verified by the customer to show completion of work, but that one specific customer had requested that when a subcontractor perform work, the customer have a chance to review it. In sum, most of the control LSI allegedly exercised over Jackson was simply ensuring that Jackson performed the work according to LSI's contract with its customers. "A general right . . . to insure the satisfactory completion of the work in accordance with the terms of the contract does not mean that the independent contractor is controlled as to his methods of work, or as to operative detail." 41 AM. JUR. 2D *Independent Contractors* § 34.

Having found that Jackson was an independent contractor, not an employee of LSI, we need not address the issue of whether the "going or coming" rule[7] applies to bar LSI from being vicariously liable for Jackson's alleged negligence. *See Nazar*, 291 S.W.3d at 606 (citation omitted) ("A principal may be held vicariously liable for the negligent acts of his or her agent, but generally is not held liable for the conduct of an independent contractor.").

Finally, the Brocks raise the issue of whether their claim for negligent hiring, training, supervision, control, and retention fails if Jackson was an independent contractor. We have been unable to locate any Kentucky caselaw authorizing a claim for negligent hiring or retention of an independent contractor and the Brocks have not cited any. Even if such a claim were authorized, the trial court did not err in granting summary judgment on this claim because the Brocks cannot prove the elements of negligent hiring or retention.

Under Kentucky law, the elements of negligent hiring and retention are: (1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the

---

[7] Generally, an employer "is subject to vicarious liability for a tort committed by its employee acting within the scope of employment." *Papa John's*, 244 S.W.3d at 47. The "going and coming" rule states that injuries sustained by employees going to or coming from their regular place of work are not within the scope and course of employment. *See Kaycee Coal Co. v. Short*, 450 S.W.2d 262 (Ky. 1970).

-10-

plaintiff. *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 733 (Ky. 2009) (citation omitted). Here, there is no evidence that Jackson was an unsafe driver or unfit for his job prior to the accident or that LSI knew or should have known that Jackson created an unreasonable risk of harm to Ora Lee Brock. In fact, it appears that LSI was not even aware that Mr. Brock would be accompanying Jackson to the job site on the day of the accident.

Based upon the foregoing, the order of the Clark Circuit Court granting summary judgment in favor of LSI is affirmed.

JONES, JUDGE, CONCURS IN RESULT ONLY.

CETRULO, JUDGE, CONCURS AND FILES SEPARATE OPINION.

CETRULO, JUDGE, CONCURRING: I concur with the majority Opinion. I write separately to add that there is further support for affirming the trial court contained within the record below.

Whether a person is an employee or an independent contractor is a question of law. *Auslander Properties, LLC v. Nalley*, 558 S.W.3d 457, 463 (Ky. 2018). In this case, the majority has outlined the various factors that have historically been considered and the more recent focus on the degree of control exercised. I agree with the majority that the trial court did not err in finding that Jackson was an independent contractor based upon those factors. However, the record also reveals that Jackson admitted 21 separate requests for admissions

-11-

pursuant to Kentucky Rule of Civil Procedure 36, all of which supported the trial court's determination that he was an independent contractor. He later confirmed those responses were accurate and truthful in his deposition testimony.

CR 36.01(2) provides, in pertinent part, that when a party makes a written request of another party to admit the truth of a matter, the matter is deemed admitted unless – within 30 days after service of the request – the party to whom the request is directed serves upon the party requesting the admission a written answer or objection. CR 36.02 provides that "[a]ny matter admitted under Rule 36 is **conclusively established** unless the court on motion permits withdrawal or amendment of the admission." (Emphasis added.) Mr. Jackson specifically admitted that he entered into a contract stating that he was an independent contractor and that he intended to have that status for any work he performed for LSI. He admitted that he was not an employee; that he used his own tools and vehicle; that he retained the right to accept his own separate work and set his own schedule outside of LSI; and that he hired Mr. Brock to help him without any knowledge or involvement of LSI.

A judicial admission "has the effect of removing a fact or issue from the field of dispute; it is conclusive against the party and may be the underlying basis for a summary judgment, . . . ." *Berrier v. Bizer*, 57 S.W.3d 271, 279 (Ky. 2001) (quoting R. LAWSON, THE KENTUCKY EVIDENCE LAW HANDBOOK § 8.15, at

-12-

386 (3d ed. 1993)).  Of course, CR 56 specifically provides that summary judgment may be granted upon the "pleadings, depositions, answers to interrogatories, stipulations, and admissions on file" if they establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  CR 56.03.  While this is a tragic case, LSI was entitled to summary judgment as a matter of law.


BRIEFS FOR APPELLANTS
TAMMY BROCK INDIVIDUALLY
ANS AS NEXT FRIEND OF
ALEXUS BROCK:

M. Stanley Goeing
Matthew S. Goeing
Lexington, Kentucky


BRIEF FOR APPELLANTS JAMIE
BROCK AND ASHLEY BROCK:

Gregory M. Funfsinn
Kenneth C. Human
Lexington, Kentucky

BRIEF FOR APPELLEE
LANDSCAPE SERVICES INC.:

Michael P. Casey
R. Sean Quigley
Lexington, Kentucky